OPINION OF THE COURT
ADAMS, Circuit Judge.
The questions before us in this appeal arise out of a host of personal injury and wrongful death actions filed by plaintiffs who have been exposed to asbestos and to products manufactured from asbestos fiber. Johns-Manville Corporation, as well as vari *1071 ous subsidiaries and other corporate entities affiliated with it (collectively called JohnsManville), is named as a defendant in virtually every case. U.N.R. Industries (Unarco) is also a named defendant in many cases; several other manufacturers, distributors, and suppliers of asbestos fiber and asbestos products are defendants and third-party defendants in various cases.
On July 29, 1982, Unarco filed a petition for reorganization under Chapter 11 of the Bankruptcy Reform Act of 1978 in the bankruptcy court for the Northern District of Illinois. On August 26,1982, Johns-Man-ville filed a similar petition in the bankruptcy court for the Southern District of New York. Citing the automatic stay provisions of the Bankruptcy Act[1] and appealing to a trial court’s inherent power to regulate litigation, several defendants moved in the district courts for orders staying or suspending further proceedings in these cases. The remaining defendants joined these motions, and various plaintiffs filed cross-motions for an order severing from the main cases all claims asserted by and against Johns-Manville and Unarco. The district courts denied defendants’ motions and granted plaintiffs’ motions, thus severing and staying all claims, counterclaims, cross-claims, and third-party claims brought by or against Johns-Manville and Unarco and requiring all remaining claims to proceed to trial. Several defendants filed timely notices of appeal from these orders, and the various appeals were consolidated along with a petition for a writ of mandamus or prohibition.
I
We must first direct our attention to the jurisdictional base on which we might ground appellate review of the district judges decision that these cases proceed to trial. Defendants advance several possible grounds: some demand an appeal as of right from a final order or from an injunctive, interlocutory order; others seek original review by a petition for a writ of mandamus or prohibition. The distinctions are important, for on direct appeal a reviewing court has broad and in some instances plenary authority to “modify, vacate, set aside or reverse” an order of the district court and on remand may direct any such action “as may be just under the circumstances.” 28 U.S.C. § 2106 (1982). In contrast, under the All Writs Act, 28 U.S.C. 1651(a) (1976), appellate courts may issue a writ of mandamus or prohibition only when “necessary or appropriate in aid of their . .. jurisdictions.” While a simple showing of error might be sufficient to obtain a reversal on a direct appeal, a writ of mandamus issued under such circumstances “would undermine the settled limitations upon the power of an appellate court to review interlocutory orders.” Will v. United States, 389 U.S. 90, 98 n. 6, 88 S.Ct. 269, 275 n. 6, 19 L.Ed.2d 305 (1967); United States v. Cuthbertson, 651 F.2d 189, 193 (3d Cir.1981).
A
 Several defendants maintain that the orders of the district court denying a stay are appealable as of right under 28 U.S.C. § 1291, a provision that establishes appellate jurisdiction over most final decisions of district courts.[2] An order requiring that a trial proceed is not a final order in the traditional legal sense, since it does not embody a conclusive judgment as. to any element of the controversy underlying the trial. Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). Defendants direct our attention, however, *1072 to the “collateral order exception” to § 1291. That exception, as explained in Cohen v. Beneficial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949), refers to the “small class” of decisions that “finally determine claims of right separable from, and collateral to, rights asserted in the action, [claims] too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.”
Defendants assert that their claim to protection under the automatic stay of the Bankruptcy Codé is a claim of right, collateral to the rights asserted in the underlying tort actions filed against them, and that this right is so important as to make postponement of appellate review of a denial of that claim a fundamental injustice. We cannot agree.
This Court has consistently maintained that the collateral order doctrine must be sparingly applied, “lest the exception swallow up the salutary general rule.” Akerly v. Red Barn System, Inc., 551 F.2d 539, 543 (3d Cir.1977); Rodgers v. U.S. Steel Corp., 541 F.2d 365, 369 (3d Cir.1976). If the principle imparting finality to certain collateral, intermediate orders does not go so far as to include an order granting a stay in a civil action, Cotler v. Inter-County Orthopaedic Ass'n, 526 F.2d 537 (3d Cir.1975), or an order setting a trial date in a criminal proceeding “no matter how serious the consequences for a defendant are alleged to be,” Stans v. Gagliardi, 485 F.2d 1290, 1292 (2d Cir.1973), we do not perceive how an order setting a trial date for tort actions, some of which were filed six years ago, can legitimately be considered as the predicate for an extraordinary appeal. Such an order is simply a step in the process of bringing a ' case to final judgment and can be effectively reviewed on appeal from that judgment.
B
Several defendants seek to predicate the jurisdiction of this Court on 28 U.S.C. § 1292(a)(1), which provides for appellate review of certain interlocutory orders taking the form of an injunction.[3] A party seeking review under this statute must shoulder a heavy burden, since the centrality of the final judgment rule in apportioning judicial business among the several tiers of our court system has led to a policy of strictly construing § 1292, again “lest a floodgate be opened that brings into the exception [so] many pretrial orders” as to frustrate the policy against piecemeal appeals. Switzerland Cheese Ass’n, v. E. Horne’s Market, Inc., 385 U.S. 23, 24, 87 S.Ct. 193, 194, 17 L.Ed.2d 23 (1966).
The key determination in establishing jurisdiction under § 1292 is the judgment that a given interlocutory order is properly cognizable as an injunction. The general framework for making this judgment has been established by the Supreme Court in two cases. The first of these, Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935), establishes that a decree staying an action at law, pending adjudication of an equitable defense, is in effect an injunction and could be appealed under the forerunner of § 1292; the second, Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942), establishes that an order requiring that an equitable counterclaim be decided before the legal claim on which the action was premised is also an interlocutory order reviewable by appellate courts. These two cases and the appellate decisions that follow them offer no mechanical procedure by which one can determine whether an interlocutory order is reviewable.
The most frequently quoted rule for gauging the propriety of grounding appellate jurisdiction over interlocutory orders in § 1292 was given by Chief Judge Tuttle:
An order staying or refusing to stay pro- „ ceedings in the District Court is appeala *1073 ble under 1292(a)(1) only if (A) the action in which the order was made is an action which, before the fusion of law and equity, was by its nature an action at law; and (B) the stay was sought to permit the prior determination of some equitable defense or counterclaim.[4]
Jackson Brewing Co. v. Clarke, 303 F.2d 844, 845 (5th Cir.), cert. denied, 371 U.S. 891, 83 S.Ct. 190, 9 L.Ed.2d 124 (1962).
There can be no doubt that the wrongful death and personal injury actions filed in the district courts, whose trial orders are now challenged, were actions at law before the fusion of law and equity. There is considerable doubt, however, whether the stays defendants seek would permit the pri- or determination of some equitable defense or counterclaim. Defendants’ primary argument before the district courts in favor of imposing a stay was that the automatic stay provision of the Bankruptcy Code bars all actions against the non-bankrupt defendants.[5] Such an assertion, however, does not raise an equitable defense or counterclaim against the issues at bar.[6] The automatic stay, grounded in statute, does not preclude or absolve liability for otherwise tortious conduct. It simply postpones adjudication of liability pending the orderly review of a debtor’s affairs in a bankruptcy court, See 16 C. Wright, A. Miller, E. Cooper, & E. Gressman, Federal Practice and Procedure § 3923 at 55, n. 17 (henceforth Wright & Miller). The district court concluded that the automatic stay applies only to debtors in bankruptcy, a decision that can be timely reviewed on appeal, should a final order ultimately be entered in these cases.
Defendants’ other argument for predicating appellate jurisdiction on § 1292 is no more compelling. It may be, as defendants urge, that if an order had issued staying trial in these cases, the parties and the courts would avoid wasteful and duplicative litigation. But again this judgment would not raise an equitable defense or counterclaim. Rather, it would raise an equitable consideration to be weighed by the trial judges in properly exercising their discretion to control litigation before their courts. The denial of a stay in these cases does not settle or even tentatively decide anything about the merits of a claim or counterclaim in the actions to be tried:
It is strictly a pretrial order that decides only one thing — that the case should go to trial. Orders that in no way touch on the merits of the claim but only relate to pretrial procedures are not in our view “interlocutory” within the meaning of § 1292(a)(1). We see no other way to protect the integrity of the congressional policy against piecemeal appeals.
Switzerland Cheese Ass’n, supra, 385 U.S. at 25, 87 S.Ct. at 195.
II
Several of the appellants urge us to review the district courts’ denial of a stay *1074 in the trial proceedings under our power to issue a writ of mandamus or prohibition.[7] We believe that we do have jurisdiction to review the denial of the stay under the All Writs Act. Furthermore, from time to time this Court has chosen to treat improper claims to an appeal as of right as petitions for mandamus or prohibition, at least when the exercise of discretionary review would not severely prejudice any of the litigants and the party seeking relief is barred from all avenues of appeal. See Cheyney State College Faculty v. Hufstedler, 703 F.2d 732, 736 (3d Cir.1983); 16 Wright & Miller, supra, § 3932 (Supp.1982). We will follow that course here and treat the appeals under sections 1291 and 1292 as though they were petitions for a writ of mandamus.
Petitioners, then, seek a writ directing Judges Ackerman and Brotman to stay all proceedings in the cases in question. When the original petition was filed by defendant Brinco Mining, the trials were scheduled to begin on April 5,1983 — four cases at a time before four different judges and juries, until all were tried. A panel of this Court heard oral argument on Brinco’s petition and, on April 1, 1983, stayed the trials, pending further argument and the filing of responses to the petition.[8] The Court also asked the Philadelphia Bar Association to file a brief as amicus curiae.[9]
A
Petitioners acknowledge that those who seek a writ, of mandamus or prohibition must show that their “right to issuance of the writ is ‘clear and indisputable.’ ” Bankers Life & Casualty Co. v. Holland, 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953) (quoting United States v. Duell, 172 U.S. 576, 582, 19 S.Ct. 286, 287, 43 L.Ed. 559 (1899)). Traditionally, the writ has been used to confine an inferior court to the lawful exercise of its jurisdiction or to compel the court to exercise its lawful authority when it is under a duty to do so. Roche v. Evaporated Milk Ass’n, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). Although, in modern practice, the writ of mandamus has sometimes been applied more broadly, it may not properly be employed to review each and every decision of a trial court, even if on an appeal after final judgment a reviewing court might find reversible error. First Jersey Securities Inc. v. Bergen, 605 F.2d 690 (3d Cir.1979). Before the writ may issue, an appellate court must find a clear legal error calling for relief that can be obtained through no other means. United States v. Helstoski, 576 F.2d 511, 516 (3d Cir.1978), aff’d 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979); Plekowski v. Ralston-Purina Co., 557 F.2d 1218, 1220 (5th Cir.1977).
It is against this background that petitioners seek relief by mandamus. They assert that the Supreme Court’s decision in Northern Pipeline Construction Co. v. Marathon Pipeline Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), has invalidated the entire jurisdictional grant of the Bankruptcy Code, 28 U.S.C. § 1471 (Supp. V 1981), making it legally impossible for either the district courts or the bankruptcy court to exercise legitimate authority over these cases. The Supreme Court stayed its judgment in Marathon, first until October 4, 1982, and then until December 24, 1982, to “afford Congress an opportunity to re *1075 constitute the bankruptcy courts or to adopt other valid means of adjudication....” 102 S.Ct. at 2880. On December 23, the day before the Marathon stay expired, Brinco removed the cases to which it was a party to the United States Bankruptcy Court for the District of New Jersey.[10] On July 5, 1983, the bankruptcy judge denied Brinco’s motion to transfer the removed cases to the Bankruptcy Court for the Southern District of New York and granted plaintiffs’ cross-motion to remand the eases to the district court. By now, though, with the expiration of the stay, there existed, in petitioners’ words, a jurisdictional “black hole.” The bankruptcy judge, it is argued, was without authority to grant a motion to remand, and the district court judges were without authority to take the cases up and order them to trial. Petitioners call upon us to confine the bankruptcy and district courts to the proper exercise of their jurisdiction.
This plea in effect calls upon us to overturn a recent decision of this Court, Coastal Steel Corporation v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 200 (3d Cir.1983), cert. denied, _ U.S. _, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983). Coastal, however, is the law of this Circuit, and we are bound by its holding that district courts continue to have subject matter jurisdiction over bankruptcy matters after Marathon.[11] On the principal petitioner’s motion, these actions were transferred on December 23rd to the bankruptcy court from a court which clearly had jurisdiction to hear the cases under the diversity jurisdiction of 28 U.S.C. § 1332. To allow petitioners now to assert that the expiration of the stay in Marathon on December 24th has thrown these cases into a jurisdictional limbo would be to tolerate a use of procedural rules that would give the appearance of “triflpng] with the judicial process.” Livesay Industries v. Livesay Window Co., 202 F.2d 378, 382 (5th Cir.1953). This we will not do.[12]
Petitioners also advance another set of reasons which in their view require that a writ be issued to prevent the district courts from proceeding to trial. They assert that Johns-Manville was the dominant supplier of asbestos to many of the work sites and plants whose employees are now bringing suit. As principal defendant in these actions, they maintain, Johns-Manville took the lead in gathering the evidentiary material necessary for an appropriate adjudication of the cases at bar. Because the bankruptcy court has stayed proceedings against Johns-Manville, however, several co-defendants complain that they cannot obtain discovery of this critical evidence. Finally, petitioners allege that proceeding to trial without Johns-Manville as a defendant would increase the probability that the remaining defendants would be burdened with adverse judgments that should properly be borne by Johns-Manville. In any event, they assert, trial verdicts would lead to unnecessary and duplicative litigation as disappointed plaintiffs and over-burdened defendants seek to reach Johns-Manville in subsequent actions. In sum, these arguments reduce to the claim that we should stay proceedings in the interest of judicial economy and fairness to the parties.
It is well settled that before a stay may be issued, the petitioner must demonstrate “a clear case of hardship or inequi *1076 ty,” if there is “even a fair possibility” that the stay would work damage on another party. Landis v. North American Co., 299 U.S. 248, 255, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936). In these cases, the clear damage to. the plaintiffs is the hardship of being forced to wait for an indefinite and, if recent experience is any guide, a lengthy time before their causes are heard. Moreover, we cannot ignore the fact that plaintiffs and crucial witnesses are dying, often from the very diseases that have led to these actions. We are not persuaded that the hardship imposed on defendants by proceeding to trial without Johns-Manville or our legitimate interest in judicial economy is sufficient to force these plaintiffs to forbear until the bankrupt defendants emerge from the reorganization proceedings.[13] The defendants may be seriously inconvenienced by the resumption of the actions against them; under the standard announced in Landis, however, the balance of hardship weighs in favor of the injured plaintiffs.
We also note that under the applicable federal law the Chapter 11 debtors are potential joint tortfeasors and not indispensible parties to the cases now under review. Field v. Volkswagenwerk-AG, 626 F.2d 293, 298 n. 7 (3d Cir.1980). Under New Jersey law, a party compelled to pay more than its proper share of a tort recovery may seek contribution from the other joint tortfeasors. 2A N.J.Stat.Ann. § 15-5.3 (West Supp.1983); Tino v. Stout, 49 N.J. 289, 300, 229 A.2d 793, 799 (1967). In effect, then, by ordering trial to go forward, the district court judges have simply shifted the burden of pursuing Johns-Manville from the plaintiffs to whichever defendants are ultimately judged responsible for inflicting at least part of the harm alleged. This, of course, as Tino v. Stout makes clear, is the rationale behind New Jersey’s joint tortfeasor and right-to-contribution statutes.
Particular defendants might be handicapped in particular cases because JohnsManville assumed the lead in amassing the evidentiary material necessary to defend itself and its co-defendants in the upcoming litigation. In our view, however, that fact is not sufficient to justify a blanket prohibition against all proceedings against all defendants. The decision to allocate such responsibility to Johns-Manville was part of a consciously chosen trial strategy, and while we do not fault petitioners for dividing the tasks of trial preparation, it would be unfair to burden plaintiffs with the unexpected and -untoward consequences of defendants’ decisions. Petitioners have had ample opportunity during the lengthy stay occasioned by the proceedings before this Court to re-fashion their trial strategy. Discovery seems to have been completed in some of the cases now at issue, and proceedings have been scheduled before experienced trial judges who can decide defendants’ claims of prejudice on a case-by-case basis[14] and *1077 who, by rearranging their calendars, can schedule cases for later trial if a delay appears appropriate.[15]
Ill
The power to stay proceedings is incidental to the power inherent in every court to schedule disposition of the cases on its docket so as to promote fair and efficient adjudication. How this can best be done is a decision properly vested in the trial courts. Landis v. North American Co., supra, 299 U.S. at 254-55, 57 S.Ct. at 165-66. District courts have wide discretion in setting their own calendars, and when a matter is committed to the discretion of those courts, it cannot be said, absent a patent abuse of that discretion, that “a litigant’s right to a particular result is ‘clear and indisputable.’ ” Will v. Calvert Fire Ins. Co., 437 U.S. 655, 665-66, 98 S.Ct. 2552, 2558-59, 57 L.Ed.2d 504 (1978).
We believe that the strict requirements for a writ of prohibition or mandamus have not been met, for the orders setting trial dates are not marked by the abuse of judicial power that mandamus is designed to prevent. The understandable distress of petitioners cannot be charged against the plaintiffs or the trial judges. Burdens are inevitable for all participants in the complex litigation spawned by the vast number of asbestos related injuries. Those burdens, however, are not sufficient to overcome plaintiffs' legitimate expectation that their cases be resolved without endless delay.
Because this Court is without jurisdiction to consider the appeals, they will be dismissed. Refashioned as petitions for a writ of mandamus or prohibition, see supra at 1074, they, as well as the original petition, will be denied.

. The filing of a petition under chapter 11 actuates a stay against:
the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.
11 U.S.C. § 362(a)(1) (1982).

. Section 1291 provides that federal courts shall generally have “jurisdiction of appeals from all final decisions of the district courts of the United States ... except where a direct review may be had in the Supreme Court.” 28 U.S.C. § 1291 (1976).

. Section 1292 provides that the courts of appeal shall have jurisdiction over interlocutory, orders of the district courts, “granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court.” 28 U.S.C. § 1292(a)(1) (1976).

. In both Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935), and Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942), plaintiff brought an action in law to recover the proceeds of life insurance policies. In each case, the defendant insurance company sought the equitable remedy of cancellation upon the ground of fraud in the application.

. Judge Ackerman refused to certify his denial of a stay so that an appeal of the interlocutory decision could be had under 28 U.S.C. § 1292(b). In his view, the applicability of the automatic stay did not present a controlling question of law as to which there was substantial ground for difference of opinion. See Austin v. Unarco Industries, 705 F.2d 1 (1st Cir.1983); Williford v. Armstrong World Industries, 715 F.2d 124 (4th Cir.1983); Lynch v. Johns-Manville Corp., 701 F.2d 42 (6th Cir.1983). Judge Ackerman also held that an immediate appeal from the order that trial begin would not advance the ultimate termination of the litigation.

. We agree that the Enelow-Ettelson distinction between legal and equitable relief is somewhat “artificial,” Coastal Steel v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 194 (3d Cir.1983), but to deny the difference between legal and equitable relief in the claims pressed before us today would undercut the sound policies the Supreme Court sought to further in originally drawing the distinction. As this Court pointed out in Coastal, a claim for money actions in a tort action is a plea for “classic legal relief.” Id.

. The All Writs Act provides that the “Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.” 28 U.S.C. § 1651(a) (1976).

. Judge Ackerman, as nominal respondent, did not file a reply. Rule 21(b) of the Federal Rules of Appellate Procedure provides that a respondent judge may opt not to appear at a proceeding for an extraordinary writ, without thereby admitting the grounds for relief stated in the petition. This Court has also endorsed the proposition that if the petition for a writ is used to seek review of the merits of a ruling, rather than to attack the conduct of a trial judge, the participation of the judge in the review should be nominal. Rapp v. Van Dusen, 350 F.2d 806, 814 (3d Cir.1965).

. The Court expresses sincere thanks to the Philadelphia Bar Association for responding to °ur request. The amicus brief addressed the issues underlying the petition for mandamus with considerable care and competence,

. The Bankruptcy Reform Act of 1978 provides for the removal of certain actions to the bankruptcy court for the district where the actions are pending “if the bankruptcy courts have jurisdiction” over such actions. The court to which the action is removed may remand the action “on any equitable ground.” 28 U.S.C. § 1478 (Supp. V 1981).

. Accord White Motor Corp. v. Citibank, N.A., 704 F.2d 254 (6th Cir.1983); First National Bank v. Hansen, 702 F.2d 728 (8th Cir.1983); In re Braniff Airways, 700 F.2d 214 (5th Cir.), cert. denied, _ U.S. _, 103 S.Ct. 2122, 77 L.Ed.2d 1302 (1983). See also In re Keene Corp., _ U.S. _, 103 S.Ct. 1237, 75 L.Ed.2d 470 (1983) (mandamus denied); but see Roy v. Northern National Bank, 32 B.R. 1008 (D.Me.1983).

. If the district court were to vacate its order removing these cases to the bankruptcy court; we believe that the spirit of the Rules of Civil Procedure'would be observed, insofar as we are instructed to construe those rules so as to secure the just and speedy determination of every action. Fed.R.Civ.P. 1.

. Accord Austin v. Unarco Industries, 705 F.2d 1 (1st Cir.1983); Williford v. Armstrong World Industries, 715 F.2d 124 (4th Cir.1983); Wedgeworth v. Fibreboard Corp., 706 F.2d 541 (5th Cir.1983); Lynch v. Johns-Manville Sales Corp., 710 F.2d 1194 (6th Cir.1983).

. The hardship inflicted on certain defendants by the district courts’ order that these disputes finally be adjudicated might outweigh the inconvenience some plaintiffs would suffer from delay. We do not believe, however, that the imbalance is so serious as to warrant the issuance of a writ of mandamus, especially since the trial courts- will be in a better position than the members of this panel to judge whether a delay may be appropriate in a particular case.
The several actions before us actually fall into discrete classes: those cases brought by plaintiffs employed in the Manville plant (the plant-worker cases), those by plaintiffs employed at various shipyards, and, finally, those by plaintiffs employed by Owen-Illinois. Defendants in the plant worker cases appear most severely burdened by the orders setting trial dates, for key evidence as to both the amount of asbestos supplied to the Manville plant and plaintiffs’ exposure to the defendants’ product seems to be in the hands of Johns-Manville. Defendant Brinco, for example, contends that preliminary discovery indicates that (1) Man-ville provided the bulk of the asbestos to which the plant-workers were exposed; (2) no other defendant supplied as much as 1% of the asbestos; (3) the plaintiffs were only briefly employed at the Manville plant and may not have worked in buildings where Brinco’s asbestos was used. Brinco argues that without documentation on the supply issue and Manville’s personnel records, it bears a heavy burden in *1077 defending these cases. Prudent scheduling may ameliorate the problems these defendants might face. Legitimate claims as to unfair prejudice can, of course, be addressed by this Court, if adverse judgments are entered against these defendants. In assessing these claims, we will then have the advantage of a proper record and will not have to base our judgment on speculation as to what evidence is available or necessary.

. We note with approval the orders entered by the Bankruptcy Court of the Southern District of New York on October 11, 1983, relaxing the general ban on discovery directed toward information in Johns-Manville’s control, and we presume that the parties complaining of prejudice have availed themselves of this new opportunity. While we have some question about the power of that court to decide important issues arising out of litigation within this Circuit, we need not address that concern now. We understand that Brinco is seeking a further relaxation of the limitations on discovery imposed by the bankruptcy court. If that court were to grant further relief, many of the problems adverted to in footnote 14 would be resolved or minimized.