UNITED STATES of America, Plaintiff,

v.

Helen KRAMER, et al., Defendants,

v.

AMERICAN CYANAMID COMPANY, et al., Third–Party Plaintiffs,

v.

A. MARIANNI'S SONS, INC., et al., Third–Party Defendants.

STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, Plaintiff,

v.

ALMO ANTI–POLLUTION SERVICES CORP., et al., Defendants.

v.

AMERICAN CYANAMID COMPANY, et al., Third–Party Plaintiffs,

v.

ABM DISPOSAL SERVICE, et al., Third–Party Defendants.

Civ. A. No. 89–4340(JFG).

United States District Court, D. New Jersey.

July 8, 1991.

956

Bernard P. Bell, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, D.C., for plaintiff U.S.

Richard Engel, Deputy Atty. Gen., Dept. of Environmental Protection, Trenton, N.J., for plaintiff State of N.J.

Michael L. Krancer, Joseph Dominguez, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for third-party defendants Philadelphia Newspapers, Inc., Litton Industries, Inc., Litton Business Systems, Inc. and Litton Industrial Automation Systems, Inc.

Franklin J. Riesenberger, Mitchell H. Kizner, Riesenberger & Kizner, Vineland, N.J., for third-party plaintiffs.

Glenn A. Harris, Levin & Hluchan, Voorhees, N.J., for defendant Atochem North America, Inc.

William H. Hyatt, Jr., Pitney, Hardin, Kipp & Szuch, Morristown, N.J., for defendants Exxon Research & Engineering Co., E.I. DuPont DeNemours & Co., Rohm and Haas Co., Continental Can Co., Monsanto Co. and American Cyanamid Co.

OPINION

GERRY, Chief Judge.

BACKGROUND [1]

The parties are presently before the court upon third-party defendants' motion to sever and stay the third-party claims filed against them, and upon the United States' motion for amendment of a case management order. Plaintiffs, the United States and the State of New Jersey, brought this case pursuant to section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"),[2] 42 U.S.C. § 9607(a), to recover response costs expended at the Helen Kramer Landfill in Mantua, New Jersey. The United States has sued twenty-nine defendants, and New Jersey has sued over fifty defendants (some of whom are also named as defendants by the United States).

On November 20, 1990, the primary defendants in the United States' action filed third-party claims against 289 third-party defendants, and the primary defendants in New Jersey's action filed third-party claims against 275 third-party defendants. These third-party complaints seek contribution pursuant to section 113(f) of CERCLA, 42 U.S.C. § 9613(f). The third-party defendants now move to sever and stay these third-party complaints from the claims asserted by plaintiffs against the defendants/third-party plaintiffs ("primary claims").

The United States filed a cross-motion for amendment of case management order. Essentially, it seeks to trifurcate this action—with the first phase limited to all issues of liability in the primary claims, the second phase limited to issues of recovery of plaintiffs' past and future response costs, and the third phase consisting of all remaining issues including the third-party claims. In the alternative, the United States asks that we at least grant third-

1. We set forth a more detailed background of this case in our opinion reported at *U.S. v. Kramer*, 757 F.Supp. 397 (D.N.J.1991).

2. CERCLA was amended by the Superfund Amendments and Reauthorization Act ("SARA") of 1986 Pub.L. No. 99-499, 100 Stat. 1613, 42 U.S.C. §§ 9601-9675.

party defendants' motion to sever and stay the third-party claims.

## DISCUSSION

### 1. Motion to Sever and Stay Third–Party Claims

Third-party defendants move to sever and stay the third-party claims, pursuant to Federal Rules of Civil Procedure 14(a) and 42(b), until after the adjudication or settlement of the plaintiffs' claims against the primary defendants. They argue that the severance and stay would prevent the derailing of the progress made to date in the primary litigation, preclude the unnecessary litigation of potentially moot claims, prevent undue complication of the primary suit and promote the likelihood of an early settlement. Therefore, the severance and stay would promote "the fundamental policies underlying CERCLA—expeditious recovery of money to the Fund." Third-Party Defendants' Memorandum in Support of Motion to Sever and Stay, at 1.

Defendants/third-party plaintiffs counter that, in fact, the policies underlying CERCLA will be promoted if the third-party claims are not severed or stayed. They argue that severance would encourage delay and undermine judicial economy by requiring separate, largely duplicative proceedings. Defendant/third-party plaintiff Atochem argues that a severance and stay also would scuttle the case management scheme crafted by Magistrate Judge Jerome B. Simandle in this case, and would decrease the chance of settlement—because third-party defendants will have no real incentive to participate in meaningful settlement negotiations.

#### a. Power of the Court to Sever and Stay

Third-party defendants' motion is based upon Rules 42(b) and 14(a). Rule 42(b) provides that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim." Rule 14(a) provides that "[a]ny party may move to strike the third-party claim, or for its severance or separate trial."

■ A district court has inherent power to "control the disposition of cases on its docket with economy of time and effort for itself, for counsel and for litigants." *Landis v. North Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936). *See also* Manual for Complex Litigation 2d ("MCL 2d") § 20.1, at 6 (1985). Rules 14(a) and 42(b) supplement this power and entrust the decision of whether issues should be separated for trial to the discretion of the trial court. *See, e.g., Bandai American Inc. v. Bally Midway Mfg. Co.,* 775 F.2d 70, 74 (3rd Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). *See also Gold v. Johns–Manville Sales Corp.,* 723 F.2d 1068, 1077 (3rd Cir. 1983) ("The power to stay proceedings is incidental to the power inherent in every court to schedule disposition of the cases on its docket so as to promote fair and efficient adjudication. How this can best be done is a decision properly vested in the trial courts.")

■ In addition, the specific statutory provision governing the third-party claims in this case also leaves the decision whether to sever to the discretion of the trial judge. CERCLA Section 113(f)(1), 42 U.S.C. § 9613(f)(1), provides that

> [a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal Law.

On its face, the statute expresses no preference either way with regard to whether the contribution claims should be severed; rather, it provides only that those claims may be brought "during or following" the primary action.

Although they admit these general propositions, third-party defendants argue that,

in passing SARA,[3] Congress expressed a preference that third-party contribution claims under CERCLA be severed from the primary claims. As support, they cite two proposals considered by Congress: (1) an original Senate Bill under which claims for contribution could be brought only after the completion of all proceedings in the primary action, and a report accompanying that Bill filed by the Committee on Environment and Public Works, the Senate Committee with primary jurisdiction over environmental legislation; and (2) an EPA and Justice Department proposal which provided that although the contribution claims could be filed during the primary action, the hearing of those claims would be stayed until resolution of the primary suit.[4] While third-party defendants recognize that neither of these proposals was ultimately adopted by Congress, they argue that certain statements made by the sponsors of the amendment ultimately adopted, Senators Stafford and Thurmond, make clear that the statute embodied the views of the Committee on Environment and Public Works and the administration (EPA/Justice Department) that "joint trial of massive third-party litigation is inappropriate where the governmental entity is the plaintiff in the main action." Original Brief, at 11–12. From this, they argue that "the legislative history clearly shows that Congress preferred that the discretion vested in the district courts generally be exercised" in favor of severance. *Id.* at 12.

Ultimately, however, we find that the legislative history is inconclusive. As third-party plaintiffs point out, if Congress had wished to express such a preference, it easily could have drafted a provision which reflected that intention. *See Barnes v. Cohen,* 749 F.2d 1009, 1013 (3rd Cir.1984) ("in interpreting a statute, the starting point is, of course, the language of the statute itself"); *Albert v. Abramson's Enterprises, Inc.,* 790 F.2d 380, 381 (3rd Cir.1986) ("It is presumed that the legislative purpose is

expressed by the ordinary meaning of the words used"). Moreover, the legislative history includes the expression of views contrary to the ones cited by third-party defendants. *See* report by House Committee on Energy and Commerce, H.R. 2817 Report 99–253, Part I, at 80; statements by Senator Simpson and witnesses before the Senate Judiciary Committee, Hearings Before the Committee on the Judiciary, 99th Cong. 1st Sess. at 77–78, 147–151, 452–453, 512–514. While the parties dispute the weight to be given the various statements cited on each side of the issue, we think that, at bottom, no Congressional "preference" can be divined. Therefore, we think that courts must make a case-by-case determination as to whether a severance and stay is appropriate.

b. Application to the Facts of This Case

Although the parties discussed the two together for the most part, we shall distinguish between, and deal separately with, a severance of the third-party claims for trial and a stay of discovery with regard to the third-party claims.

*i. Severance for Trial*

■ On several occasions (and, in fact, in this very case), we have noted the fundamental purpose of CERCLA to ensure prompt and efficient cleanup of hazardous waste sites. *See U.S. v. Kramer,* 757 F.Supp. 397, 410 (D.N.J.1991); *U.S. v. Rohm and Haas Co., Inc.,* 669 F.Supp. 672, 674, 680 (D.N.J.1987) ("*Rohm & Haas I*") (also noting the "overwhelming ... public interest ... in effecting expeditious cleanup of potentially health and life threatening hazardous waste sites"); *U.S. v. Rohm & Haas, Co.,* 721 F.Supp. 666 (D.N.J.1989) ("*Rohm & Haas II*"). The very structure of the statute reflects this purpose—it permits a party seeking recovery of response costs (ordinarily the government) to sue only those potentially responsible parties it wishes to, even though those parties may

---

**3.** CERCLA § 113(f) was added by SARA § 113(b).

**4.** Third-party defendants also discuss statements made by Assistant Attorney General F. Henry

Habicht II, head of the Justice Department's Land and Natural Resources Division, and Lee M. Thomas, the EPA Administrator, in support of the EPA/Justice Department proposal.

constitute only a fraction of the responsible parties. *See* 42 U.S.C. § 9607(a). We have also recognized that this basic purpose is furthered by settlement—which can cut down complex and unwieldy litigation. *See Rohm & Haas II,* 721 F.Supp. at 679 (noting "Congress' intention to facilitate the voluntary settlement of CERCLA litigation"). *See also* 42 U.S.C. § 9622(a) (specifically authorizing the President to enter into settlements so as to "expedite effective remedial actions and minimize litigation").

█ Again, the parties do not dispute these general principles; rather, they disagree about whether or not a severance will effectuate CERCLA's purposes. We agree with the moving third-party defendants that those purposes will be served best in this case by a separation of the trial of the third-party contribution claims.

Trial of the third-party contribution claims would unduly complicate and overburden any trial of the primary suit. As we discussed in *Kramer,* Congress explicitly limited the defenses available to rebut a plaintiffs' cost recovery action to the three defenses provided by section 107(b) of CERCLA. *Id.,* 757 F.Supp. at 424–428. Accordingly, we struck all of the equitable defenses asserted by the primary defendants. *Id.* We specifically stated that

> [t]his conclusion is not at odds with a finding that Congress did not intend to limit equitable considerations in section[ ] ... 113. Equitable considerations logically can be precluded from the imposition of strict liability, yet be permitted in the court's determination of apportionment. While negligence or due care by defendants are irrelevant to a finding of strict liability, they "may be relevant to issues of apportionment of liability among the defendants" in a contribution action. The exclusion of equitable defenses when considering liability under 107(a) does not limit equitable considerations in section 113 contribution proceedings.

*Id.* at 428 (citations omitted). The exclusion of equitable defenses, and of all other defenses not expressly allowed under section 107(b), is designed to allow prompt, efficient recovery of response costs.

Separating the trial of the third-party claims in this case furthers that purpose by ensuring that a trial of the primary claims will not become bogged down by the contribution claims. Trial of the third-party claims would involve both a significant multiplication of the number of parties (through the addition of nearly 300 third-party defendants) and a significant multiplication of the issues in the case (through the addition of, for example, the numerous equitable defenses not otherwise relevant to the primary action). This would unduly complicate the issues in the trial of the primary claims, and would delay plaintiffs' prompt recovery of their response costs—thereby frustrating section 107(a)'s purposes.

Defendants/third-party plaintiffs argue that the third-party claims should not be severed because a severance will substantially reduce the incentive of third-party defendants to actively participate in the settlement process and will frustrate the goal of judicial economy. We do not agree. As discussed more fully below, we think that incentives for settlement can be maintained and actually furthered by a severance—when granted in conjunction with a creative and effective case management scheme.

Defendants/third-party plaintiffs argue that judicial economy would be promoted by a denial of the motion to sever. They argue that much of the same testimony and evidence would be introduced in each of the separate proceedings, and as a consequence, severance will be a wasteful and burdensome exercise. While we recognize that there is some truth to that position, we think that, ultimately, these concerns are outweighed by the prospect of overburdening the primary litigation. Section 107(a) reflects the clear intention of Congress not to let equitable claims for contribution, or other possible defenses, overwhelm a response cost recovery action.

Moreover, our concerns regarding the possibility of duplication of effort are lessened somewhat by several factors. First,

resolution of the primary action may render portions of the third-party claims moot. For example, defendants may prevail as to liability or as to the divisibility of the harm, thereby rendering moot all claims for contribution. In addition, effective case management may result in an early settlement—either of the liability issues or of the whole case—which would eliminate the possibility of duplicative proceedings. Finally, resolution of the primary claims may eliminate some issues in dispute and/or may act as a prod to settlement of the third-party claims. Once the parties have the benefit of a decision or verdict as to the primary claims, they will be in a better position to assess the strengths and weaknesses of their respective cases. We agree with the sentiments expressed in *City of New York v. Exxon Corp.*, 85 Civ. No. 1939 (S.D.N.Y. filed Jan. 23, 1987) (Weinfeld, J.):

> To try this case with well over 300 parties would be overwhelming due to the resulting administrative, procedural, factual, and legal complexity. Such a mass trial would also result in the unnecessary expenditure of a tremendous amount of money, time and effort on the part of hundreds of parties and the wasting of judicial resources arising out of months of discovery, motion practice and the trial itself. Determination of issues in the primary case, or a settlement, should it occur, is likely to eliminate many issues in dispute between the defendants and the third-party defendants. This would dispose of certain claims and parties involved in the third-party actions, as well as offer the prospect of an amicable disposition of many of the other third-party claims.

*See also Colorado v. ASARCO, Inc.*, No. 83–C–2388 (D.Colo. filed August 30, 1985) (Carrigan, J.) (granting motion for separate trial and noting expectation "that the first trial will eliminate many issues in dispute ..., and [anticipating] that this will lead to a more expeditious settlement of many of the third-party claims").

Defendants/third-party plaintiffs rely heavily on *U.S. v. New Castle County*, 116 F.R.D. 19 (D.Del.1987), in which a motion for a separate trial of third-party claims in a CERCLA action was denied. In that case, the factor which "weigh[ed] most heavily in the Court's determination" was its belief that consolidation of all of the claims would promote a global settlement of the whole case. However, there is no evidence in the opinion that a structured settlement process, like the one contemplated in this case (and discussed below), was put in place or considered. In addition, the opinion does not discuss the Congressional policy in favor of *expeditious* recovery of response costs and the effects upon that policy of the introduction of numerous additional defenses unavailable to the primary defendants. At any rate, to the extent that it is inconsistent with our conclusions, we respectfully disagree with the decision in *New Castle County*.

Third-party defendant Atochem cites numerous authorities for the proposition that third-party contribution claims under Fed. R.Civ.P. 14(a) should be tried together with the primary action. However, these cases deal with contribution claims in general and do not approximate the factual situation involved in this case. We agree with those cases that, in an ordinary case, judicial economy is promoted by resolution of contribution claims at the same time as the main claims. However, this is not an ordinary case—it involves more than 50 primary defendants and almost 300 third-party defendants. In addition, the underlying statute in this case reflects Congress' intention that plaintiffs be able to recover their response costs *expeditiously*. Therefore, we think that the authorities cited by Atochem on this issue are inapplicable to this case.

For all of the foregoing reasons, we shall grant third-party defendants' motion to separate the trial of the third-party claims from the primary action.

#### ii. Stay of Discovery On Third–Party Claims

■ Having determined that a separation of the trial of the third-party claims is appropriate in this case, we shall turn to the different, although related, question of whether discovery with regard to the third-

party claims should be stayed. To properly analyze that question, we must first review the management of this case to this point.

Magistrate Judge Simandle has directed the management of this case from its inception. Recognizing that "[a] major ingredient in a multi-party hazardous waste litigation settlement process is the assembly of a 'critical mass' of potentially responsible parties willing to undertake a settlement," Simandle, "Resolving Multi–Party Hazardous Waste Litigation", 2 Vill.Env.L.Rev. 111, 125 (1991), and that "the settlement process becomes most viable when most parties believed to have a substantial connection to the landfill have been joined," *id.* at 125–126, Magistrate Judge Simandle immediately gave the joinder of new parties top priority in the litigation. He accomplished this by precluding, until further order, the filing of all counterclaims, cross-claims and third-party claims, *see* Case Management Order ("CMO") No. 1, at ¶ 4, by providing an organized process through which the government plaintiffs could join new defendants, *see id.* at ¶ 6–8, and by limiting the scope of discovery (again, until further order) to the identification of new parties and to the quantity, quality and nexus of parties' waste to the Helen Kramer Landfill.

Thereafter, Magistrate Judge Simandle provided for the orderly joinder of the numerous third-party defendants and initiated procedures for informal discovery between third-party plaintiffs and defendants. *See* CMO 3, CMO 4.

Finally, Magistrate Judge Simandle has instituted a structured settlement process (after receiving nearly unanimous support for such a procedure from the parties present at a pre-trial conference). *See* CMO No. 5, at ¶ 57; CMO No. 6, at ¶ 65; CMO No. 7, at ¶ 71. Under this process, liaison counsel negotiated the contours of the settlement process and drafted a concise description of that process which included: a settlement protocol, an opt-in/opt-out statement of intent, a discovery questionnaire and a timeline. As presently scheduled, Magistrate Judge Simandle, after having considered the final proposed settlement process documents and any written objections filed thereto, shall adopt or modify those documents. Thereafter, the existing parties shall file an executed Statement of Intent signifying agreement to participate in good faith in the settlement process, or declining to so participate. *See* CMO No. 7, at ¶ 71(L).

With that background in mind, we now turn to the issue of whether to stay discovery as to the third-party claims. Under the settlement process presently contemplated by Magistrate Judge Simandle, formal discovery would be stayed as to all third-party defendants who opt-in to the process. While those third-party defendants would still be able to engage in informal discovery with defendants/third-party plaintiffs, by opting-in, they would be released from the burdens of full-fledged, formal discovery. In contrast, discovery would not be stayed with regard to third-party defendants opting-out of the settlement process.

We think that the approach contemplated is a sound one. The benefit of this approach is that it provides an incentive for third-party defendants to enter into good-faith settlement negotiations without overburdening both them and plaintiffs with extensive formal discovery. In addition, by saving the litigation costs associated with formal discovery, all of the defendants ought to have more money available to pay as part of a negotiated settlement. *See* Simandle, *supra,* at 113–114 ("The dollars spent in the process of reaching a final judgment may well outstrip the underlying costs of remediation and future operation and maintenance of the Superfund site if such litigation is uncontrolled.").

There appears to be near unanimous support for the initiation of a structured settlement vehicle. *See* CMO No. 5, at ¶ 57 (noting near unanimous expression of support for the initiation of such a vehicle at a pre-trial conference); Third–Party Plaintiffs' Brief in Opposition to Motion, at 18–19; Brief of Atochem in Opposition, 13–15; Proposed Case Management Order, submitted in conjunction with the United

States' cross-motion for amendment of case management order.

This process goes a long way toward granting third-party defendants the relief they seek. They argue that a stay of all discovery as to the third-party claims provides sufficient incentives for settlement—without the opt-in scheme presently contemplated. To the extent that they are correct, the opt-in scheme essentially will have no effect. If a third-party defendant would have participated in good-faith settlement negotiations while discovery as to the claims against it were stayed unconditionally, there is no reason why that defendant would not opt-in to the settlement process presently contemplated. By opting-in, a third-party defendant would only be agreeing to participate in good-faith negotiations—it would not be bound by any agreement which it did not voluntarily wish to enter. The defendant would only be bound by its executed statement that it would negotiate in good-faith. Therefore, if defendants are correct, they will ultimately receive the relief they seek because the third-party defendants will opt-in to the settlement process and all corresponding discovery will be stayed. To the extent that third-party defendants are wrong, the conditional stay of the proposed settlement process has the benefit of providing additional incentives to join settlement negotiations in good faith.

Defendants/third-party plaintiffs object to the settlement process on two grounds. First, they assert that "deadlines for the promulgation of this procedure have already been missed and the timing has had to be extended. Also, parties are at loggerheads over key provisions of the procedure including funding and the logistics of information exchange." Despite these potential stumbling blocks, we are confident that the parties, along with the guidance of Magistrate Judge Simandle, will be able to successfully implement the settlement process—in fact, since the filing of defendants' brief, the final proposed settlement process descriptive documents have been submitted to the Magistrate Judge Simandle.

Next, defendants/third-party plaintiffs point to alleged difficulties that would arise if new third-party defendants are added. However, CMO No. 7 explicitly provides for just such a contingency—stating that such a party shall have sixty days in which to file an executed statement of its intention to participate, or not to participate, in the settlement process. As discussed above, no party will be bound by an agreement into which it did not voluntarily enter. Again, we are confident that Magistrate Judge Simandle will be able to deal effectively with any problems arising from the addition of new third-party defendants.

For these reasons, we shall deny the motion to stay all discovery regarding the third-party claims. Instead, we direct Magistrate Judge Simandle to continue his efforts to implement a structured settlement process under which formal discovery will be stayed only with regard to those third-party defendants who agree to participate in good-faith negotiations.

*2. Government's Cross–Motion*

Although captioned as a cross-motion seeking amendment of a case management order, the United States, in essence, proposes an extension of third-party defendants' motion to sever and stay. The United States seeks not only to separate the third-party claims from the primary claims, but also to divide the primary case into two distinct phases. Under its trifurcated approach, the first phase will be limited to all issues of liability with respect to the plaintiffs' claims, the second phase will be limited to issues related to recovery of plaintiffs' past and future costs, and the third phase will consist of all remaining claims, including counterclaims, cross-claims and third-party claims. Discovery with regard to subsequent phases will be stayed until after resolution of all issues in the prior phase(s). However, third-party defendants would only be protected by the stay of third-phase discovery if they opt-in to the settlement process discussed above. If a third-party defendant opts-out of the process, it will be subject to discovery by defendants/third-party plaintiffs, but would still be prohibited from taking dis-

covery from plaintiffs or from participating in plaintiffs' discovery of defendants during the first two phases.

The United States argues that this three-phased approach will ensure that plaintiffs' cost recovery actions are not delayed, while maintaining settlement leverage over recalcitrant third-party defendants. Defendants/third-party plaintiffs counter that the United States' motion is an untimely attempt to appeal CMO No. 1, entered by Magistrate Judge Simandle. They also argue that the cross-motion is tantamount to severance of the third-party claims and should be rejected for the same reasons that third-party defendants' motion to sever and stay should be rejected.

■ With regard to timeliness, we agree with the United States that this is not an appeal of CMO No. 1. That order set forth the initial management of the case—establishing, among other things, a scheme for orderly joinder of new parties. It did not forever set the management of the case in stone. *See* MCL 2d § 21.41, at 43 ("the discovery plan should be periodically monitored and evaluated, and revised when merited by the circumstances"). We are confident that Magistrate Judge Simandle did not intend CMO No. 1 to be a decision that the proposed trifurcated approach should never be adopted. Rather, it is more likely that Magistrate Judge Simandle felt that he was not in a position at that early stage in the litigation to properly consider the merits of that approach.

■ Turning to the merits of the cross-motion, we think that the United States' proposal is too rigid. Under its proposal, all discovery applicable to phase two—issues related to recovery of plaintiffs' past and future costs—would be stayed until final resolution of all liability issues. We think that this approach could lead to significant delays in the progression of this case—even if all of the liability issues could be decided on summary judgment. From experience, we know that the papers submitted in conjunction with motions for summary judgment in cases such as this tend

to be lengthy and to involve many complex issues. Consequently, the parties usually must be given extensions of time in which to file responsive papers. And, it is likely that we will require more time than usual to resolve the complex issues presented and to draft an opinion which adequately addresses those issues. Therefore, if second-phase discovery is stayed until after all issues are resolved, and even if the first phase is resolved in the most expeditious manner possible (other than settlement)—i.e. summary judgment, a significant period of time, during which discovery as to the second phase could have been proceeding, will be lost.[5]

Although we think that the specifics of the United States approach are too rigid, we do think that there is some merit to the general principles evidenced by that approach. As discussed above, we shall separate the trial of the third-party claims and shall stay formal discovery as to third-party defendants who opt-in to the settlement process. We agree with the United States that discovery as to liability issues should be given some preference over other issues in the case. *See* MCL 2d § 21.421 ("Although discovery by all parties ordinarily proceeds concurrently, sometimes one or more parties should be allowed to proceed first. .... The court may establish periods in which particular parties will be given exclusive or preferential rights" to take discovery). Although liability issues should be given some preference, we are not convinced that discovery as to all other issues should be stayed. As noted in MCL 2d, courts

> should not ... necessarily limit discovery to issues that should be resolved early in the litigation.... For example, limiting inspections to documents bearing on a primary issue may be wasteful if the same set of records may be relevant to secondary issues. Similarly, in deposing a witness knowledgeable about both critical and marginal issues, counsel should not be restricted to the critical issues if

---

**5.** Of course, if a summary judgment motion is filed but denied in whole or in part, even more

time will be lost while the parties await a trial date.

examination on the other subjects would not unduly lengthen the deposition. *Id.* § 21.41 at 42. On the other hand, we do not want to so broaden the scope of discovery as to eliminate any preference at all. We shall leave these issues of fine-tuning to Magistrate Judge Simandle. We are confident that he will be able to implement an effective and efficient phased discovery program which addresses our concerns.

For all of the above reasons, the United States cross-motion shall be denied.

## CONCLUSIONS

For the foregoing reasons, defendants'/third-party plaintiffs' motion to sever and stay shall be granted in part and denied in part, and the United States cross-motion for amendment of Case Management Order is denied.

We want to point out that the management of this case is not set in stone. Magistrate Judge Simandle has done an outstanding job handling this complex case, and we commend him for his innovative efforts. However, events may change and may require us to revisit some of the issues decided today. *See* MCL 2d § 21.41 at 43 ("the discovery plan should be periodically monitored and evaluated, and revised when merited by the circumstances"). For example, we do not intend this opinion to be the final word on the issue of whether we should separate the trial of liability (the United States proposed phase one) from the trial of plaintiffs' recovery of its past and future costs (the United States proposed phase two). We found that the proposal asserted by the United States was too rigid, and we feel that a final decision on that issue would be premature. We will be in a much better position to make that determination when the record is more fully developed—for example, after the resolution of a motion for partial summary judgment as to liability. It may be advisable to revisit that issue at such a time.