An accompanying Order will be entered.

Jessica GRIFFITH, Plaintiff

v.

ALLSTATE INSURANCE
CO., Defendant.

Civil Action No. 3:13–2674.

United States District Court,
M.D. Pennsylvania.

Signed Feb. 21, 2014.

Stephen J. Fendler, Fendler and Associates, Kingston, PA, for Plaintiff.

Daniel E. Cummins, Foley Cognetti & Cowley, Scranton, PA, Kristin H. Jones, Marshall J. Walthew, Sara B. Richman, Pepper Hamilton LLP, Philadelphia, PA, for Defendant.

### MEMORANDUM and ORDER

MALACHY E. MANNION, District Judge.

Presently before the court is the defendant's motion to sever brought pursuant to Fed. R. Civ. Pro. 42(b). (Doc. No. 6).

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arise from a car accident where the plaintiff was hit by another motorist. The plaintiff was covered by an insurance policy issued by the defendant. The policy had an underinsured motorist (UIM) coverage of $25,000/$50,000 stacked by two vehicles. (Doc. No. 1, Exh. 2). After the plaintiff settled her first-party claims with the other driver's insurance carrier, she made an UIM claim with the defendant because her damages exceeded the other driver's policy limits. The plaintiff submitted various documents supporting her claim and the defendant offered to settle for $5,000. The plaintiff rejected that offer and demanded the policy limits of $50,000.

The plaintiff initially filed her two-count complaint on October 18, 2013, in the Pennsylvania Court of Common Pleas for Luzerne County alleging breach of contract and bad faith in violation of 42 Pa. C.S. § 8371. (Doc. No. 1, Exh. 2). The defendant removed the case to this court on October 30, 2013, (Doc. No. 1), and filed an answer on December 16, 2013. (Doc. No. 3). The defendant then filed the instant motion and brief in support on January 9, 2014, to stay and sever the bad faith claim. (Doc. Nos. 5, 6). The plaintiff filed her opposing brief on January 21, 2014. (Doc. No. 8). The motion is now ripe for the court's ruling.

## II. DISCUSSION

The defendant argues that bifurcation pursuant to Rule 42(b) is appropriate in the instant matter to avoid prejudice and promote judicial efficiency given the discovery disputes that will arise with proceeding simultaneously on the plaintiff's breach of contract and bad faith claims. (Doc. No. 6). Specifically, the defendant argues that the bad faith claim will require extensive discovery into materials that are privileged and may qualify as work product. The defendant also argues that the claims themselves are "profoundly different" given the breach of contract focuses on external issues, while the bad faith claim focuses on the internal practices of

the defendant insurance company. (*Id.*). The plaintiff counters that the issues are nearly identical and that the additional discovery and evidence is not so prejudicial as to require bifurcation. (Doc. No. 8).

 Federal Rule of Civil Procedure 42(b) provides:

(b) Separate Trials. For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

The court has wide latitude in deciding whether to sever and stay proceedings by weighing the competing interests of the parties and attempting to maintain a fair balance. *Cooper v. Metlife Auto & Home,* 2013 WL 4010998, *2 (W.D.Pa. Aug. 6, 2013) (*citing Landis v. N. Am. Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936); *Barr Labs., Inc. v. Abbott Labs.,* 978 F.2d 98, 105 (3d Cir.1992); *Bechtel Corp. v. Laborers' Int'l Union,* 544 F.2d 1207, 1215 (3d Cir.1976)). "It is well settled that before a stay may be issued, the petitioner must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work damage on another party." *Gold v. Johns–Manville Sales Corp.,* 723 F.2d 1068, 1076 (3d Cir.1983) (quoting *Landis,* 299 U.S. at 255, 57 S.Ct. 163). Severance requires the balancing of several factors, including the convenience of the parties, the prejudice to either party, and the promotion of the expeditious resolution to the litigation. *Official Committee of Unsecured Creditors v. Shapiro,* 190 F.R.D. 352, 355 (E.D.Pa.2000) (internal quotations omitted).

 The moving party bears the burden of showing that bifurcation is appropriate given the specific facts and issues present in a particular case. *Cooper,* 2013 WL 4010998, *2. "Specifically, the court is to consider: (1) whether the issues are significantly different from each other; (2) whether they require separate witnesses and documents; (3) whether the nonmoving party would be prejudiced by bifurcation; and (4) whether the [moving] party would be prejudiced if bifurcation is not granted." *Id.* (citing *Reading Tube Corp. v. Emp'rs Ins. of Wausau,* 944 F.Supp. 398, 404 (E.D.Pa.1996)).

 It is also helpful to frame the plaintiff's burden in establishing the defendant acted in bad faith. "To succeed on a bad faith claim, a plaintiff must demonstrate by clear and convincing evidence '(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis.'" *Verdetto v. State Farm Fire & Cas. Co.,* 837 F.Supp.2d 480, 484 (M.D.Pa.2011) *aff'd,* 510 Fed.Appx. 209 (3d Cir.2013) (quoting *Klinger v. State Farm Mut. Auto. Ins. Co.,* 115 F.3d 230, 233 (3d Cir.1997)). In simpler terms, the plaintiff must show the defendant failed to make good faith efforts to settle the claim for a reasonable value given the plaintiff's injuries.

 Turning to the first factor, the defendant contends the issues are "profoundly different." The court does not agree. The central questions are significantly intertwined. In the breach of contract claim, the question for the jury will be whether the plaintiff suffered injuries from the accident that were covered under her UIM policy and she was not otherwise properly compensated. Similarly, the bad faith claim will require the jury to determine whether the defendant's investigation into those same injuries was reasonable and, if so, whether there was a reasonable basis supporting the defendant's offer of

settlement. The pivoting point for both cases will be the plaintiff's injuries, represented through relevant medical evidence and the defendant's claim file. The jury will be able to properly evaluate the entire case including the accident, the plaintiff's injuries, the defendant's investigation, and, finally, the attempts to settle the matter. The first factor favors keeping the claims joined.

Second, the defendant points to the disclosure of documents that may or may not qualify as work product in connection with the bad faith claim. The defendant argues that the disclosure of the impressions of the claims adjuster will hinder the defendant's ability to litigate the breach of contract claim. Although no exhibits have been provided with the instant motion, the court is familiar with the contents of an insurer's claims file. A file generally includes correspondence from plaintiff's counsel, medical records, wage-loss records, logs indicating what material has been received, and notes from the claims adjuster regarding his or her impression of the claim's value. The vast majority of the evidence in the claim file will be presented in conjunction with the breach of contract claim. Moreover, only the claim adjustor's notes or other impression *may* qualify as work product. The bad faith claim will also only require a few additional witnesses who will discuss evidence of the plaintiff's damages that will likely be admitted in conjunction with the breach of contract claim. In sum, the evidence and testimony will overlap significantly. This factor weights against bifurcation as well.

Although the defendant details how bifurcation could promote judicial efficiency if the breach of contract claim is adjudicated first, the court fails to see how it is reasonable given the circumstances. Discovery, dispositive motions, pre-trial motions, and trial place a substantial burden on any party. Bifurcation would essentially double the life of this action requiring a second discovery period, more dispositive motions, more pre-trial motions, and a completely separate second trial. Although the defendant speculates that a favorable resolution of the breach of contract claim may expedite the subsequent bad faith claim, this fact remains true even if the claims are kept together.

The defendant points this court to *Dunkelberger v. Eris Ins. Co.*, No.2010–1956, (Pa.Ct.Comm.Pl. Jan. 24, 2011), out of the Court of Common Pleas for Lebanon County in support of its position.[1] That court noted the defendant insurance company would be prejudiced if its subjective analysis of a claim was released. Moreover, if its claim evaluation process became public record, it would divulge business secrets to other insurance companies. The defendant relies only on the prejudice caused by releasing the claims adjustor's impressions regarding the plaintiff's claims and does not contend releasing its claims evaluation process will somehow create a competitive hindrance.

The court is unpersuaded that this would lead to any undue or unnecessary prejudice in light of the countervailing interests of judicial economy and the swift resolution of this matter. Courts have found that institution of a bad faith claim does not automatically waive attorney-client privilege or the work product doctrine. *McCrink v. Peoples Benefit Life*

---

1. The defendant includes and cites to a bevy of cases out of various Pennsylvania Courts of Common Pleas in support of its position. The court notes it was the defendant who removed the case to this court and availed itself to the rules, procedures, and case law of the Federal District Court. The defendant made the strategic decision to have this case tried in this court and must now accept the consequences.

*Ins. Co.*, 60 Fed.R.Serv.3d 86, 2004 WL 2743420 *3 (E.D.Pa.2004). Communications between in-house counsel and claims adjustor are generally privileged. *Quaciari v. Allstate Ins. Co.*, 1997 WL 570921, *1 (E.D.Pa. Sept. 3, 1997). Moreover, only when a defendant affirmatively pleads reliance on counsel's advice is such a privilege waived as to the communications between the specific counsel and the client. *McCrink*, 60 Fed.R.Serv.3d 86, 2004 WL 2743420 *3.

The defendant has not affirmatively pleaded any defense related to advice of counsel, so any documents it claims are protected by attorney-client privilege will be handled appropriately. Further, the claim file is merely a collection of documents along with notes from the adjustor. As the defendant is well aware, Pennsylvania mandates an insurer act in good faith in negotiating with an injured party. The defendant has communicated offers of settlement, pegging what it believes is a fair value for the plaintiff's injuries. It is unclear how disclosing the notes that led the defendant to make that determination would place it at any disadvantage if the claims adjustor acted in good faith as required under Pennsylvania law.

Lastly, the defendant raises some evidentiary arguments as to why the trial should be bifurcated. The Federal Rules of Evidence allow documents and testimony to be entered for narrow purposes. At this point it is premature to determine whether specific pieces of evidence would be admissible wholly or on a limited basis. The best way to make that determination is to keep the matters joined, allow discovery to proceed, and bring both claims to trial as quickly as possible. Any discovery disputes or questions of privilege can be handled through the discovery dispute procedures employed by the court.

## III. CONCLUSION

For the reasons stated above, the defendant's motion to sever and stay the bad faith claim is **DENIED**.