CESSNA AIRCRAFT
COMPANY, Plaintiff,

v.

FIDELITY AND CASUALTY COMPANY OF NEW YORK and Certain Underwriters at Lloyd's, London, and Certain British Companies, Defendants.

FIDELITY AND CASUALTY COMPANY OF NEW YORK and Certain Companies and Underwriters at Lloyd's of London, Plaintiffs,

v.

CESSNA AIRCRAFT
COMPANY, Defendant.

Civ. A. Nos. 85–0063, 84–4614.

United States District Court,
D. New Jersey.

Aug. 26, 1985.

Tompkins, McGuire & Wachenfeld by William B. McGuire (argued), Lorraine M. Armenti (on brief), Newark, N.J., for Cessna Aircraft Co.

McCarter & English by Eugene M. Haring (argued), Beverly R. Tanenhaus, Newark, N.J., and Engstrom, Lipscomb & Lack by Paul W. Engstrom, admitted pro hac vice (argued), Los Angeles, Cal., for Fidelity and Cas. Co. of New York and Certain Companies and Underwriters at Lloyd's of London.

## OPINION

COHEN, Senior District Judge:

### I. INTRODUCTION

On June 8, 1984 a unanimous jury returned a verdict in favor of the plaintiffs in three consolidated personal injury, wrongful death/or product liability cases; namely, *Joseph E. Guarnere v. Shirley Harper, et al.*, Civil Action No. 80-3285, *Thomas Cannuli v. Cessna Aircraft Company*, Civil Action No. 81-2209, and *Shirley Harper v. Cessna Aircraft Company*, Civil Action No. 82-1052. The verdict awarded both compensatory and punitive damages in favor of all three plaintiffs and against Cessna Aircraft Company (hereinafter

Cessna). The award of compensatory damages totaled $4,300,000, while punitive damages totaled $25,000,000. Shortly thereafter, Cessna filed motions with this Court seeking, alternatively, a new trial, judgment notwithstanding the verdict or a remittitur. At the request of all parties, and to facilitate a non-litigious conclusion of the matter, this Court postponed its adjudication of Cessna's motions on numerous occasions. Finally, in February, 1985, the parties to the consolidated actions reached a settlement whereby the plaintiffs agreed to accept approximately $13 million in return for the withdrawal of Cessna's motions and an agreement not to appeal.

Underlying the negotiations between the individual plaintiffs and Cessna were discussions between Cessna and its insurers, Fidelity and Casualty Company of New York (hereinafter Fidelity) and Certain Underwriters at Lloyd's, London, and certain British Companies (hereinafter Lloyd's), relating to the payment of the damage award and, more importantly, the ultimate liability for the award of punitive damages. The actions presently before this Court are the outgrowth of a dispute between Cessna and its insurers on the issues of the insurability against punitive damage awards and the coverage provided by the insurance contracts herein at issue.

Prior to any consideration of the ultimate issues, we must determine whether these two actions should be adjudicated in Federal court, State court, or both. On November 13, 1984, Fidelity and Lloyd's filed a declaratory judgment action in this Court seeking a determination of their obligation to pay punitive damages (hereinafter the Federal court action). Before filing its Answer to the Fidelity and Lloyd's Complaint,

Cessna, on December 3, 1984, filed an essentially identical declaratory judgment action in the Law Division of New Jersey Superior Court, Essex County (hereinafter the State court action). On January 4, 1985, the State Court action was removed to this Court on the petition of Fidelity and Lloyd's. In the interim, on December 27, 1984, Cessna filed its Answer in the Federal court action. Thus, we currently have two actions before us involving identical parties as well as identical issues of fact and law.

Fidelity and Lloyd's maintain that the State court amounts to a compulsory counterclaim to the Federal court action and is duplicative of that previously filed action. As such, they maintain that the State court action should be dismissed. Cessna, on the other hand, urges that the State court action was improperly removed to this Court. In support of its contentions, it relies upon a "Service of Suit" or forum selection clause, which is contained in the Lloyd's policies and which states, in effect, that Lloyd's agrees to submit to the jurisdiction of any court within the United States when a dispute arises as to the payment of sums alleged to be due under the policy [1]. By its motion, Cessna seeks the remand of the State court action and the dismissal, or stay, of the Federal court action. We shall first address Cessna's motion for remand.

## II. CESSNA'S MOTION TO REMAND THE STATE COURT ACTION

A. Prior to addressing the merits of Cessna's motion, we must determine the applicability of the forum selection clause contained in its agreement with Lloyd's [2]. Service of suit clauses, or forum selection

---

1. In pertinent part, the language of the clause is as follows:

   SERVICE OF SUIT CLAUSE (U.S.A.)
   (*Approved by Lloyd's Underwriters' Non-Marine Association*)

   It is agreed that in the event of the failure of Underwriters [i.e. Lloyd's] hereon to pay any amount to be due hereunder, [Lloyd's] hereon, at the request of the insured (or reinsured), will submit to the jurisdiction of any Court of competent jurisdiction within the United States and

will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that ... [Lloyd's] will abide by the final decision of such Court or of any Appellate Courts in the event of an appeal.

2. Because only the Lloyd's policies contain the clause herein at issue, this section of the Court's opinion shall refer solely to Lloyd's.

clauses as they are commonly known, have been held to be enforceable for a number of years. In the case of *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the Supreme Court held that a forum selection clause should be controlling "absent a strong showing that it should be set aside." *Id.* at 15, 92 S.Ct. at 1916. The Court, thus, placed the burden upon the party challenging the clause to "show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* In the instant case, Lloyd's does not actually challenge the general enforceability of forum selection clauses. Rather, it maintains that the clause is inapplicable under the present circumstances.

First, Lloyd's urges that the clause does not forbid the institution of suit by the insurer prior to any action being taken by the insured. Assuming, *arguendo*, that this is true, Lloyd's has not challenged Cessna's concurrent ability to bring suit as well. The issue remains, therefore, what to do with these two actions now that they exist.

Second, Lloyd's maintains that the clause has no applicability to a declaratory judgment action seeking a judicial determination of rights and responsibilities under a contract. In making this second argument, Lloyd's urges that, at most, its only obligation under the contract is to pay the sums in dispute and, since it has done so, this action falls outside the ambit of the clause. Lloyd's interpretation of this clause, however, is unreasonably narrow. It is uncontested that Lloyd's payment in settlement of the underlying consolidated cases was a *conditional* payment, which was made for legitimate tactical, as well as economic, reasons [3]. Although there has been a conditional payment of the amount owed, this cannot alter the fact that Lloyd's continues to dispute its legal obligation *to pay.*

■ The cases cited by Lloyd's in its attempt to remove this clause from consideration are unpersuasive in light of our view that Lloyd's has not, within the meaning of the clause, *paid* the amounts due under the policy. A policy containing a clause stating, for example, that *any dispute* arising hereunder would be litigated in the forum selected by the insured, would likely have obviated the need for the instant action. *See e.g. The Bremen*, 407 U.S. at 2; *Richardson Greenshields Sec., Inc. v. Metz*, 566 F.Supp. 131 (S.D.N.Y. 1983); *Air Economy Corp. v. Aero-Flow Dynamics, Inc.*, 122 N.J.Super. 456, 300 A.2d 856 (App.Div.1973). However, the lack of such clarity, in these circumstances, is not dispositive. Because we interpret this dispute as one concerning a "failure to pay," we find the Lloyd's service of suit clause to be applicable. We turn now to the merits of Cessna's remand motion.

■ B. Language identical to that in issue here has consistently been held to constitute a waiver, by the insurer, of its right to remove an action from state court to federal court. *See Capital Bank and Trust Co. v. Associated International Co.*, 576 F.Supp. 1522 (M.D.La.1984); *Lavan Petroleum Co. v. Underwriters at Lloyd's*, 334 F.Supp. 1069 (S.D.N.Y.1971); *Perini Corporation v. Orion Insurance Co.*, 331 F.Supp. 453 (E.D.Cal.1971); *Oil Well Service Co. v. Underwriters at Lloyd's London*, 302 F.Supp. 384 (C.D.Cal.1969); *Euzzino v. London & Edinburgh Insurance Co.*, 228 F.Supp. 431 (N.D.Ill., E.D.1964). In *Euzzino*, the various references in the clause to "such court" and the insurer's agreement to comply "with all requirements necessary to give *such* Court jurisdiction," were interpreted as a waiver of

---

**3.** Prior to the post-judgment settlement of the underlying cases, Cessna and its insurers were becoming subject to thousands of dollars *per day* in post judgment interest. In order to limit their exposure to these *potentially staggering* sums, Cessna and its insurers agreed to act together in settling with plaintiffs, with the proviso that their disagreement with respect to punitive damages would be litigated at a later date. Apparently, Cessna agreed that should it ultimately be found responsible for the payment of punitive damages, it would reimburse its insurers.

the right of removal. *Euzzino*, 228 F.Supp. at 433. The identical language is present in the clause herein at issue and compels the identical result. By inserting the forum selection clause in its agreement with Cessna, Lloyd's effectively waived its right to remove any subsequent dispute under the contract to Federal court. Thus, we shall grant Cessna's motion for remand of the State court action [4].

## III. CESSNA'S MOTION TO DISMISS OR STAY THE FEDERAL COURT ACTION

With the remand of the State court action, we now have identical actions continuing along parallel paths to adjudication. The issue before us, then, is whether the Federal court action should be halted in order to allow the State court to reach its determination first. For reasons which are explained below, we believe that it should.

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936).

A determination to stay a particular proceeding on the Court's docket is an issue committed to the sound discretion of the trial court. *See Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1077 (3d Cir. 1983).

Our determination to stay the Federal court action is premised on two grounds. First, we recognize that Lloyd's has waived its right to remove Cessna's action from State court. Since that action will now be remanded, our ability to further the goals of judicial economy, through the issuance of a stay, is significantly diminished. The Anti-Injunction Act, 28 U.S.C. § 2283, provides only three exceptions to the general rule that a federal court may not enjoin a state court proceeding [5]. *See Bonser v. State of New Jersey*, 605 F.Supp. 1227, 1230 (D.N.J.1985). None seems applicable here. Thus, absent settlement, the State court action is likely to go to judgment.

Second, and most important, is the fact that the issues in the declaratory judgment actions are clearly ones of state law and public policy. Although this Court, and any federal court, is well equipped to consider and rule on state law and policy issues, the primary issue involved here—the insurability against punitive damage awards—is one which has yet to be addressed by New Jersey's highest court. Given the fact that this issue is addressed squarely by these cases, and that it is expected to be resolved rapidly through the use of summary judgment motions, we see no detriment to Fidelity and Lloyd's by staying the Federal court action. Furthermore, we see no true benefit to them in having this Court, and the Third Circuit, opine on an issue of state law when an action has been filed, pursuant to a contractual agreement, in state court. More-

---

**4.** Although the clause herein at issue is present only in the Lloyd's policies, we find that judicial economy, and the parties' interests are best served by a remand of the entire State court action rather than merely those claims which are asserted against Lloyd's. In making this finding, we note that Lloyd's is responsible for 65% of any amounts due under these policies. In addition, the parties have all referred to, and apparently considered, Fidelity and Lloyd's as one entity for purposes of this litigation. Indeed, they are each represented by the same counsel.

> In light of our determination to remand the entire State court action, we shall deny the motion to dismiss made on behalf of Fidelity and Lloyd's.

**5.** The Anti-Injunction Act provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgment. 28 U.S.C.A. § 2283 (1978).

over, should it become evident that a national policy is needed with regard to this issue, we believe that it is up to the Legislative branch to act first.

■ We note that it has not as yet been determined that the law of New Jersey will apply in this case. It is clear, however, that New Jersey's choice-of-law provisions will supply the means of making that determination. *See Klaxon Company v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1940). New Jersey's choice-of-law rule regarding liability insurance contracts is as follows:

> [T]he law of the place of the contract will govern the determination of the rights and liabilities of the parties under the insurance policy. *This rule is to be applied unless the dominant and significant relationship of another state to the parties and the underlying issue dictates that this basic rule should yield.*

*State Farm Mutual Automobile Insurance Co. v. Estate of Simmons,* 84 N.J. 28, 37, 417 A.2d 488 (1980) (emphasis added).

Although it appears that New Jersey may not be the place of the contract, we note without deciding, that, in the circumstances here, it would be unreasonable to presume that New Jersey has no significant, and perhaps dominant, relationship with this case. The aviation accident which gave rise to this dispute occurred in New Jersey and caused the deaths of two New Jersey residents and the severe injury of a third. In addition, a jury made up of New Jersey residents found Cessna's actions to be so outrageous that they warranted the award of punitive damages in the staggering sum of $25 million.

For the reasons heretofore stated, we shall grant Cessna's motion for remand, deny Fidelity and Lloyd's motion to dismiss, and stay any further consideration of the Federal Court action pending the outcome of the State court action. An appropriate order shall be issued by the Court.