925 A.2d 98 (2007)
394 N.J. Super. 71
CHUBB CUSTOM INSURANCE COMPANY, Federal Insurance Company and Executive Risk Indemnity, Inc., Plaintiffs-Appellants,
v.
The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Prudential Financial, Inc., and Prudential Equity Group, LLC, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued March 14, 2007.
Decided June 20, 2007.
*100 Christopher T. Handman (Hogan & Hartson) of the Washington, D.C. bar, admitted pro hac vice, argued the cause for appellants (Belsole & Kurnos and Mr. Handman, attorneys; Roy E. Kurnos, on the brief).
David Menzel, Parsippany, argued the cause for respondents (Cuyler Burk, attorneys; Mr. Menzel and Stephen Cuyler, of counsel; Mr. Cuyler, Mr. Menzel and Tanya Mascarich, on the brief).
Before Judges WEFING, PARKER and YANNOTTI.
The opinion of the court was delivered by
PARKER, J.A.D.
Plaintiffs Chubb Custom Insurance Company, Federal Insurance Company (Federal) and Executive Risk Indemnity, Inc. (Executive) (collectively referred to as Chubb) appeal from an order entered on April 6, 2006 dismissing the complaint as to all defendants to allow the parties to proceed with litigation commenced by defendants in Delaware almost a year after the complaint was filed in New Jersey.

I
This matter arises out of an insurance policy issued by Chubb to defendant Prudential Insurance Company of America (Prudential Insurance).[1] On April 21, 2003, judgment was entered in Ohio *101 against Prudential Securities, Inc.,[2] for in excess of $400 million, including $250 million in punitive damages. Chubb's primary policy provided coverage from August 31, 1997 through August 31, 2002, up to $50 million with a $25 million deductible for each loss and a $50 million annual aggregate deductible. Excess policies, subject to the same conditions as the primary policy, provided coverage above the first $150 million layer as follows: Executive issued a policy for $10 millionfor the $50 million layer above the first $150 million; Federal issued a policy for $10 millionfor the $100 million layer above the first $200 million. All three of the Chubb plaintiffs are incorporated outside of New Jersey but maintain their principal places of business in New Jersey. Prudential Insurance and Prudential Financial are both incorporated in New Jersey and maintain their principal places of business here. Prudential Securities is incorporated in Delaware but has its principal place of business in New York.
The Ohio action, entitled Burns v. Prudential Securities, Inc., resulted in a judgment awarding the plaintiff $11,740,994 in compensatory damages, $539,483 in annuity damages, $4,078,800.62 in pre-judgment interest, $250 million in punitive damages, and $2,835,424.81 in counsel fees against Prudential Securities. The Burns judgment implicates the second and third layers of Prudential Securities's insurance coverage under a quota share program. The quota share program holds "carriers in the program . . . severally liable for their individual percentage share."
Chubb denied coverage for the Burns judgment pursuant to Exclusion 4b of its policy which excludes coverage of damages "based upon, arising from or in consequence of deliberate conflicts of interest, any dishonest, deliberately criminal or deliberately fraudulent act or omission, gaining any profit or advantage to which one is not legally entitled, or deliberate non-compliance with any statute or regulation. . . ."
On September 3, 2004, Chubb, Federal and Executive filed a complaint against Prudential Insurance in the Superior Court of New Jersey, seeking a declaratory judgment that the policies issued by Chubb to Prudential do not afford coverage for the Burns judgment. The complaint did not include Prudential Securities, the named defendant in the Burns action. An amended complaint, filed on October 4, 2004, also omitted Prudential Securities as a party. On January 21, 2005, the trial court entered "consent orders to stay the proceedings" until the Burns appeal was complete. Another consent order, entered on June 9, 2005, stayed the proceedings, but lifted the stay of discovery.
On August 3, 2005, Prudential Insurance moved to dismiss Chubb's first amended complaint because it was not a party to the Burns action; it was merely a disinterested party to the coverage dispute. Chubb cross-moved for leave to amend the complaint and ultimately the parties consented to the amendment. Prudential Insurance then withdrew its motion to dismiss. On October 25, 2005, Chubb filed a second amended complaint to add Prudential Equity Group (f/k/a Prudential Securities) and Prudential Financial as defendants in the New Jersey action. All of the defendants in the New Jersey action are collectively referred to as Prudential.
On August 3, 2005, the same date on which Prudential Insurance moved to dismiss *102 the New Jersey complaint, Prudential Securities filed its own action for declaratory relief in the Delaware Chancery Court in which it named every interested primary and excess insurer. The complaint also included the Delaware Insurance Guaranty Association (DIGA) because Reliance Insurance Company (Reliance) one of the excess carriers and a Delaware Corporationwas insolvent and DIGA could be responsible for part of Reliance's portion of coverage.
On August 15, 2005, Chubb moved to dismiss and/or stay the Delaware proceeding in favor of the New Jersey litigation. Chubb argued that (1) the Delaware Chancery Court lacked subject matter jurisdiction because no equitable claims were raised in the Delaware complaint; and (2) the New Jersey litigation should proceed because it was filed first. During a hearing on August 26, 2005, the Delaware Chancery Court characterized the Service of Suit clause in the policy as a forum selection clause and stated that Prudential Securities had a "strong, plain, contractual right to choose the forum" for litigation under the Service of Suit clause. The Delaware court indicated that the New Jersey court "should address the forum selection clause before the Delaware Court would decide whether to enjoin the parties from litigating in New Jersey."
On December 20, 2005, the Delaware Chancery Court (1) "granted Chubb's motion to dismiss for lack of subject matter jurisdiction, but invited" Prudential to refile in the Delaware Superior Court; and (2) granted Chubb's motion to stay the Delaware proceeding while Chubb's action was pending in New Jersey. The Delaware Chancery Court indicated, however, that the first issue to resolve in Delaware Superior Court was whether its stay should be vacated.
On April 6, 2006, the New Jersey court entered an order granting Prudential's motion to dismiss the New Jersey litigation. The New Jersey court's decision was grounded in forum non conveniens and the Service of Suit clause contained in the policy.
Under its forum non conveniens analysis, the New Jersey court found that
A plaintiff's choice of forum is, in general, entitled to deference and, as such, will not be overcome unless there is a showing of hardship or an equally compelling reason rising to the level of supporting a finding that plaintiff's choice is demonstrably inappropriate. Civic Southern Factors v. Bonat, 65 N.J. 329, 333, 332 [322] A.2d 436 (1974). Even so, the presumption in favor of plaintiff's choice is only a strong one where plaintiff is a resident who has chosen his home forum. D'Agostino v. Johnson & Johnson, Inc., 225 N.J.Super. 250, 262, 542 A.2d 44 [(App.Div.1988)], rev'd on other grounds, 133 N.J. 516, 628 A.2d 305 (1993).
Remarkably, the court concluded that plaintiffs were non-residents and their choice of forum was not entitled to deference.
The New Jersey court held further that the Service of Suit clause served as a forum selection clause. The Service of Suit clause (Endorsement 1) states:
It is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company hereon, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court. *103

The court found that "[t]he plain wording of the Service of Suit clause seems to give the insured the decision of where jurisdiction should be laid."
Plaintiffs appealed and argue that the trial court erred in (1) dismissing the complaint on the ground of forum non conveniens; and (2) its interpretation of the Service of Suit clause.

II
Chubb initially argues that the trial court abused its discretion in dismissing the complaint under the doctrine of forum non conveniens because (1) none of the parties argued the doctrine; and (2) no discovery had been done. Prudential agrees that this argument was not raised by either party and neither party had an opportunity to brief it. Prudential maintains, however, that the trial court "melded a comity and forum non conveniens analysis," and relied on a comity analysis for its dismissal. We disagree.
Although the trial court acknowledged the difference between comity and forum non conveniens, it proceeded with a forum non conveniens analysis, grounded its dismissal in that doctrine and stated that "the Defendants [did] not establish[] a basis for a comity-stay."
The doctrine of forum non conveniens is "equitable in nature and allows a court to decline jurisdiction when it would be inappropriate to try the case in the forum selected by the plaintiff." Kurzke v. Nissan Motor Corp., 164 N.J. 159, 162, 752 A.2d 708 (2000). When a trial court applies the doctrine, "[a]n appellate court should not substitute its judgment for that of the trial [court] unless there is a showing of clear abuse of that discretion." Id. at 165, 752 A.2d 708.
In considering whether the doctrine is applicable, a court must undertake an analysis of the public and private interest factors set forth in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062-63 (1947), and adopted by the New Jersey Supreme Court in D'Agostino v. Johnson & Johnson, Inc., 115 N.J. 491, 494-95, 559 A.2d 420 (1989). The public interest factors include:
(1) the administrative difficulties which follow from having litigation pile up in congested centers rather than being handled at its origin, (2) the imposition of jury duty on members of a community having no relation to the litigation, (3) the local interest in the subject matter such that affected members of the community may wish to view the trial and (4) the local interest in having localized controversies decided at home.
[Kurzke, supra, 164 N.J. at 165, 752 A.2d 708 (quoting Gulf Oil supra, 330 U.S. at 508-09, 67 S.Ct. at 843, 91 L.Ed. at 1062-63).]
Among the private interest factors are:
(1) the relative ease of access to sources of proof, (2) the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining the attendance of willing witnesses, (3) whether a view of the premises is appropriate to the action and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive, including the enforceability of the ultimate judgment.
[Id. at 166, 559 A.2d 420.]
A motion to dismiss on the ground of forum non conveniens "should not be heard unless the movant has made a good faith effort to obtain discovery and can provide the court with a record verifying that discovery is unreasonably inadequate for litigating in the forum chosen by plaintiff." Id. at 168, 559 A.2d 420. A *104 movant's speculations about the difficulties of discovery are insufficient to justify dismissal based on forum non conveniens. Ibid. A court may consider such a motion, however, when "the burden to a defendant will be so grossly unfair and obvious on the face of the pleadings that discovery will not be necessary to validate" the defendant's claims. Ibid.
Moreover, a court "must give sufficient regard to `the principle that plaintiff's choice may not be defeated upon a mere balance of conveniences.'" Id. at 170, 559 A.2d 420 (quoting D'Agostino, supra, 225 N.J.Super. at 262, 542 A.2d 44). A strong presumption exists "`where the plaintiff is a resident who has chosen his [or her] home forum. A non-resident's choice of forum is entitled to substantially less deference.'" Id. at 171, 542 A.2d 44 (quoting D'Agostino, supra, 225 N.J.Super. at 262, 542 A.2d 44). A "business entity" will be "considered a resident of New Jersey" when its principal place of business is within the State. Am. Employers' Ins. Co. v. Elf Atochem, 157 N.J. 580, 590-91, 725 A.2d 1093 (1999); see also Westinghouse Elec. Corp. v. Liberty Mutual Ins. Co., 233 N.J.Super. 463, 468, 559 A.2d 435 (App.Div.1989).
Here, the court evaluated the public and private interest factors and found them in equipoise:
Applying these private and public interest factors to the two matters involved here, there is equal relative ease of access to sources of proof in both the Delaware and New Jersey actions. There also appears to be equal availability of compulsory process for attendance of witnesses. There is no substantial cost difference between testifying in New Jersey or in Delaware. For the plaintiffs, the cost of obtaining the attendance of witnesses would seem to be less in the Delaware action than the New Jersey action. With regard to the public interest factors, both corporations, Prudential Securities, Inc. and Chubb, are Delaware corporations. One of the factors is the law which must govern the action. In the circumstances of this case, the law that will govern on the coverage of punitive damages will be the law of Delaware based upon Endorsement No. 26 and the agreement of the parties that Delaware's law is most favorable on the issue of coverage for punitive damages. Continuing this case in New Jersey would require New Jersey to apply Delaware law regarding coverage of punitive damages.
The court incorrectly found that plaintiffs were not New Jersey residents; it is undisputed that plaintiffs' principal places of business are in New Jersey. Elf Atochem, supra, 157 N.J. at 590-91, 725 A.2d 1093. As New Jersey residents, plaintiffs are entitled to a strong presumption in favor of their choice of forum. See Kurzke, supra, 164 N.J. at 171, 752 A.2d 708 (quoting D'Agostino, supra, 225 N.J.Super. at 262, 542 A.2d 44).
The trial court clearly erred in dismissing the complaint on the ground of forum non conveniens because (1) the balance of public and private interests did not favor defendants, D'Agostino, supra, 115 N.J. at 494-95, 559 A.2d 420; (2) there has been no discovery in the New Jersey action to warrant a determination as to whether discovery will be more or less convenient or expensive here or in Delaware[3], Kurzke, supra, 164 N.J. at 168, 752 A.2d 708; and (3) plaintiffs are residents of New Jersey and their choice of forum is entitled to deference, Elf Atochem, supra, 157 N.J. at 590-91, 725 A.2d 1093.
*105 We note further that the trial court deemed the Delaware action more complete because it included DIGA, an entity not subject to suit outside Delaware. Prudential argues that the entire controversy doctrine requires dismissal of the New Jersey action because DIGA is an indispensable party under R. 4:28-1. We disagree. DIGA's role is speculative at the present time because its participation is based solely on findings that (1) Reliance is liable for some portion of the Ohio judgment; (2) Reliance is insolvent and unable to meet its obligations under its policy; and (3) DIGA is a guarantor of Reliance's obligation. Since Prudential's claim against DIGA is speculative, DIGA cannot be considered an indispensable party. "[A] party is not truly indispensable unless he has an interest inevitably involved in the subject matter before the court and a judgment cannot justly be made between the litigants without either adjudging or necessarily affecting the absentee's interest." Jennings v. M & M Transp. Co., 104 N.J.Super. 265, 272, 249 A.2d 631 (Ch.Div.1969). Here, there must be a determination as to Reliance's participation in coverage before Prudential can state a claim against DIGA. Any action against DIGAif it matures at allcan be pursued in Delaware at the conclusion of the New Jersey action.

III
Plaintiffs next argue that the trial court erred in interpreting and applying the Service of Suit clause, Endorsement 1 in the policy. The trial court held that the clause is a forum selection clause, entitling the insuredPrudentialto determine "where jurisdiction should be laid" based upon the following rationale:
An interpretation of the Service of Suit clause in Endorsement No. 1 that it constitutes a forum selection clause giving the insured the choice of venue no matter who files first . . . would insure that there would never be a race to the courthouse or an attempt at forum shopping by the insurer. Such an interpretation is consistent with the plain wording of the section which purports to give the insured the choice of venue. To say that the Service of Suit clause has no application when the insured files first, seems to circumvent the clear intent behind the wording of Endorsement No. 1, which gives to the insured the right to select a venue.
This interpretation, however, is inconsistent with New Jersey law.
In Elf Atochem, 280 N.J.Super. 601, 656 A.2d 58 (App.Div.1995), rev'd on other grounds, 157 N.J. 580, 725 A.2d 1093 (1999), we expressly noted that "[t]he `first to file rule' or any other rules of jurisdiction are not affected by the Service of Suit clause in [an insurer's] agreement with defendant." Id. at 609 n. 7, 656 A.2d 58 (citing Price v. Brown Group, Inc., 206 A.D.2d 195, 619 N.Y.S.2d 414, 416-18 (1994)). The subject policy in Price contained a clause identical to the Service of Suit clause in Endorsement No. 1. Id. at 417. There, the insurer filed first and the defendants moved to dismiss, arguing that the Service of Suit clause was, in effect, a forum selection clause. The Price court rejected the defendants' arguments, stating that a Service of suit clause
does not state that defendant has the exclusive right to select the court where all disputes arising under the contract are to be resolved. The [clause] does not by its terms preclude plaintiff from filing an action to adjudicate its rights under the contract, nor does it prescribe the forum for the action. It is unreasonable to infer that [the plaintiffinsurer] has no rights in that regard.
[Ibid. (emphasis added).]
In Price, the New York court noted that for an insured to retain an exclusive right to choose any forum within the United *106 Stateseven after the insurer had commenced litigationit would need to demonstrate that "the contractual provision clearly expresse[d] that intent." Id. at 418. Elf Atochem and Price are consistent with the majority of jurisdictions in this country. See, e.g., Int'l Ins. Co. v. McDermott, Inc., 956 F.2d 93, 96 (5th Cir.) (affirming that Service of Suit clause is a forum selection clause, but acknowledging that the Service of Suit clause does not prohibit insurers from bringing their own action in a forum of their own choosing), cert. denied, 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992); Berg v. MTC Elec. Techs. Co., 61 Cal.App.4th 349, 71 Cal. Rptr.2d 523, 525 (1998); Whirlpool Corp. v. Certain Underwriters at Lloyd's London, 278 Ill.App.3d 175, 214 Ill.Dec. 901, 662 N.E.2d 467, 470 (1996) (noting that the majority of states do not treat Service of Suit clauses as forum selection clauses); W.R. Grace & Co. v. Hartford Accident & Indem. Co., 407 Mass. 572, 555 N.E.2d 214, 218-20 (1990); St. Paul Surplus Lines Ins. v. Mentor Corp., 503 N.W.2d 511, 515-16 (Minn.Ct.App.1993); Brooke Group Ltd. v. JCH Syndicate 488, 87 N.Y.2d 530, 640 N.Y.S.2d 479, 481-82, 663 N.E.2d 635 (1996).
Nevertheless, the trial court opted to follow the minority view expressed in Cessna Aircraft Co. v. Fid. & Cas. Co., 616 F.Supp. 671, 674-75 (D.N.J.1985). In that case, the insurers filed a declaratory action in federal court and the insured filed an identical action in state court. Id. at 673. The federal court discussed the Service of Suit clause as synonymous with a forum selection clause and found that the insured had the exclusive right to file the litigation in the forum of its choice. Id. at 673-74. The court stayed the first-filed federal action, pending the outcome of the state action, holding that the insurers were not permitted to remove the insured's action from state court under the Service of Suit clause. Id. at 676.
We cannot determine the trial court's rationale for following a federal district court decision rather than ours, which is clearly binding on trial courts, albeit the notation in Elf Atochem was dicta. We have carefully considered the record here and find no reason to depart from the majority rule that Service of Suit clauses do not limit the insurer's forum selection when it files first in the jurisdiction of its residence.

IV
To summarize our decision: the trial court erred in (1) dismissing the complaint on the ground of forum non conveniens; and (2) holding that the Service of Suit clause is a forum selection clause. Accordingly, we reverse and remand for further proceedings. We do not retain jurisdiction.
Reversed and remanded.
NOTES
[1] Prudential Insurance is the named Parent Organization in the policy. Effective December 13, 2001, Prudential Insurance was replaced as the Parent Organization by Prudential Financial, Inc. (Prudential Financial).
[2] As a result of restructuring, Prudential Securities changed its name to Prudential Equity Group on July 1, 2003. On February 2, 2004, the entity became a limited liability company known as Prudential Equity Group, LLC (Prudential Equity).
[3] Indeed, the New Jersey court relied on the discovery obtained in the Delaware action to inform its factual determinations.