**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0770-19

LYNN HOUGHTON, and
HELPING SENIORS OF THE
VALLEY, LLC,

     Plaintiffs-Appellants,

v.

HILL WALLACK, LLP, and
EVAN M. GOLDMAN, ESQ.,

     Defendants-Respondents,

and

CHIPMAN BROWN CICERO
& COLE, LLP, JOSEPH B.
CICERO, ESQ., and STEPHANIE
HABELOW, ESQ.,

     Defendants.

_____

Argued May 20, 2021 – Decided June 24, 2021

Before Judges Yannotti, Haas, and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1081-18.

Terry E. Thornton argued the cause for appellants (O'Brien Thornton, LLC, attorneys; Merrill M. O'Brien and Terry E. Thornton, on the briefs).

James G. O'Donohue argued the cause for respondents (Hill Wallack, LLP, attorneys; Victoria J. Airgood and James G. O'Donohue, on the brief).

PER CURIAM

In this appeal, plaintiffs Lynn Houghton and Helping Seniors of the Valley, LLC, challenge an October 9, 2019 Law Division order dismissing their legal malpractice claims against defendants Evan Goldman and Hill Wallack, LLP. For the following reasons, we vacate the October 9, 2019 order and remand for further proceedings.

I.

To provide context for our opinion, we detail the salient facts and procedural history. Houghton is the sole owner of Helping Seniors, a Pennsylvania business dedicated to providing non-medical support services to the elderly. The business is a franchisee of Seniors Helping Seniors, LLC, (SHS), a company incorporated in Delaware and headquartered in Pennsylvania. Houghton executed an initial ten-year franchise agreement with SHS in November 2006.

Under the terms of the agreement, plaintiffs agreed not to compete with SHS for two years after termination of the agreement for any reason and agreed to pay attorney's fees to SHS "in connection with the enforcement of the [agreement's] covenants." Plaintiffs had the option to renew the agreement, which they did by sending a notice of renewal to SHS for an additional term of ten years commencing on November 18, 2016. On December 8, 2016, plaintiffs executed a new franchise agreement "similar to the 2006 agreement," and which contained a Delaware choice-of-law and forum clause.

In 2017, Houghton sought legal counsel to review severing her franchise relationship with SHS so she could operate her business independently. Houghton received Goldman's name from a colleague who described him as "a successful New Jersey franchise attorney." After researching Goldman online, she learned from Hill Wallack's website that he was "[c]ounsel in the Princeton, [New Jersey] office" and chair of the firm's franchise law practice. At the time, Goldman was admitted to practice law in New Jersey and the District of Columbia and claimed to have litigated matters in at least seventeen different states.

Houghton contacted Goldman on March 27, 2017 by calling the firm's New Jersey phone number and leaving a voicemail on his office phone, which

3

Goldman returned from his New York cell phone number. For the duration of their relationship, Houghton and Goldman communicated exclusively through telephone and email, primarily while Goldman was located outside New Jersey. Houghton never went to Goldman's Princeton office.

During their initial call, Houghton told Goldman she "couldn't risk [her] business in any way," and Goldman responded he would recommend against action if he did not find a "winnable" way out of the franchise agreement. After reviewing the agreement and relevant federal franchise law, Goldman believed he found a "loophole" supporting termination of the agreement and sent Houghton a March 29, 2017 engagement letter limiting the scope of their initial engagement to "consult[ing] . . . regarding concerns with the . . . franchise agreement."

Goldman sent the retainer letter to Houghton electronically on Hill Wallack letterhead that listed its Princeton address and New Jersey telephone number. Houghton returned the signed letter by mail to Goldman's Princeton office where Houghton sent all future checks for his legal services.

On April 4, 2017, Goldman sent SHS a notice of rescission to its Pennsylvania headquarters declaring the 2016 franchise agreement "void ab initio." Two days later, Goldman notified SHS that Houghton intended to

withhold franchise royalty payments. SHS's attorney responded in a letter addressed to Goldman's Princeton office disputing the allegations and seeking to resolve the dispute amicably.

In an April 22, 2017 email, Goldman advised Houghton that SHS would "try to get an injunction potentially shutting [her] down." Alarmed, Houghton responded that it was of "great concern that they could shut [her] down!" In a May 2, 2017 email, Houghton told Goldman that she was "completely stressed out over [her] business and career potential."

After settlement negotiations failed, Goldman sent Houghton a second engagement letter on May 15, 2017, again on Hill Wallack letterhead, expanding the scope of his and Hill Wallack's representation to include "litigation commenced by, or against, [SHS]." The letter also indicated that Houghton would have to "retain separate, local counsel who is licensed to practice in the [S]tate of Delaware," which plaintiffs did in an agreement with Chipman Brown Cicero & Cole, LLP, and its lawyers Joseph B. Cicero and Stephanie Habelow (CBCC defendants).

Neither of plaintiffs' engagement letters with Goldman and Hill Wallack included forum selection, arbitration, or choice-of-law provisions. Conversely, plaintiffs' engagement letter with CBCC included a provision in which the

A-0770-19

parties agreed to resolve "any dispute arising out of or relating to [the engagement] . . . including but not limited to any alleged claims for legal malpractice . . . [through] binding arbitration in Wilmington, Delaware."

Plaintiffs filed a five-count complaint against SHS in Delaware state court on June 27, 2017, later amended on September 25, 2017, alleging in part that SHS breached the agreement by failing to provide plaintiffs with necessary inspections, training, and support. Plaintiffs also contended that SHS committed fraud by omission by failing to provide them with a franchise disclosure document prior to entering the 2016 franchise agreement. The complaint identified Goldman as plaintiffs' counsel along with the CBCC defendants.

SHS moved to dismiss plaintiffs' complaint. On December 6, 2017, the court reserved decision until briefing was completed on jurisdictional issues but noted it was "not yet impressed by the [federal disclosure document] argument because when [it] read the code [and] federal regulations, [it] read it as [not] apply[ing] to renewal whether or not there has been an [i]nterruption in the business." Houghton terminated Goldman and Hill Wallack's services on December 28, 2017. On January 4, 2018, plaintiffs voluntarily dismissed the amended complaint against SHS.

6

SHS thereafter filed an application seeking attorneys' fees based on the 2016 agreement and local Delaware rules, including that the Delaware action was filed and prosecuted in bad faith. During arguments, the Delaware judge noted the "wackiness of the complaint . . . was not something . . . plaintiff[s] did. It's something that [Goldman] did." The judge noted he would "hate to punish the plaintiff[s] for [this] when the [culpable party] . . . [was] the author of this complaint." Plaintiffs contend that during negotiations, SHS's attorney told the CBCC defendants that SHS would "shut [Houghton] down" if litigation continued. Plaintiffs ultimately agreed to reimburse SHS for $120,000 in attorneys' fees incurred in defending the litigation.

On May 17, 2018, plaintiffs filed a complaint against Goldman, Hill Wallack, and the CBCC defendants in the Law Division in Mercer County alleging legal malpractice in connection with their advice in the SHS litigation. Plaintiffs contended venue was proper in Mercer County because Goldman and Hill Wallack's Princeton office is where "the majority of the acts which constitute legal malpractice occurred."

On November 27, 2018, the CBCC defendants moved to dismiss plaintiffs' complaint contending New Jersey courts lacked in personam jurisdiction over them. They also argued the arbitration agreement contained in their retainer

agreement mandated dismissal. Neither Goldman nor Hill Wallack joined CBCC's application.

Plaintiffs opposed CBCC's motion and, on December 5, 2018, filed a separate application solely against Goldman and Hill Wallack. In that motion, plaintiffs sought a determination that New Jersey law applied to their malpractice claims. They specifically argued that Goldman and Hill Wallack bore responsibility for the costs and attorneys' fees caused by their malpractice under the fee shifting principles espoused in Saffer v. Willoughby, 143 N.J. 256 (1996).

On February 19, 2019, the court held oral arguments on both applications and reserved its decisions. The court resolved the outstanding motions by issuing four separate orders with accompanying written statements of reasons: three on September 19, 2019, and a fourth, "[f]inal" order on October 9, 2019.

All three of the September 19, 2019 orders were captioned "order dismissing plaintiffs' complaint for lack of in personam jurisdiction and compelling arbitration in Wilmington, Delaware." Notably, in those orders, the court explicitly granted relief only to plaintiffs' claims against the CBCC defendants, and in the analysis section of the appended statements of reasons focused primarily on the claims and arguments against those defendants. For

8

example, without addressing Goldman or Hill Wallack's contacts with New Jersey, or New Jersey's possible interest in resolving plaintiffs' malpractice action, the court summarily concluded that "Delaware [is] the [S]tate with the first and foremost interest in adjudicating this matter" because CBCC and its attorneys "created the malpractice injury against [p]laintiff[s]," did the work, and filed the complaint in Delaware.

The court also commented that CBCC "sponsored . . . Goldman['s] pro hac vice [application] in a Delaware court." The court therefore found Delaware had a "primary interest in adjudicating this matter because its residents/resident business created an injury against [plaintiffs] in the State of Delaware," and denied plaintiffs' motion to apply New Jersey law.

In a third "amended" order, also issued on September 19, 2019, the court dismissed plaintiffs' complaint against the CBCC defendants based on jurisdictional grounds and the arbitration provision contained in their engagement letter. The statement of reasons appended to that order was substantially different than the statements of reasons appended to the two other orders issued on September 19, 2019 discussed above.

Confused regarding the effect of the three orders on their choice-of-law application in light of the court's reliance on the CBCC defendants' contacts to

support its decisions, plaintiffs' counsel sought clarification from the court. In response, the court issued a fourth order on October 9, 2019, which it characterized as "[f]inal" and "amended." That order explicitly denied plaintiffs' choice-of-law motion and dismissed the claims against Goldman and Hill Wallack. The court held:

> 1. For the reasons in the [s]tatement of [r]easons annexed to the prior orders entered on September 19, 2019 . . . , the [c]ourt denies [p]laintiffs' motion to determine that New Jersey law under Saffer v[.] Willoughby applies to plaintiffs' malpractice claim against defendants Evan Goldman and Hill Wallack[,] LLP; and

> 2. The [c]ourt having determined that "Delaware appears to be the most appropriate forum to address the injury to plaintiff[s]," plaintiffs' claims against Hill Wallack and Evan Goldman are dismissed without prejudice, because [the court] make[s] no determination of Delaware [l]aw as to the [a]rbitration [c]lause, and referred to litigation and or arbitration in Delaware; and

> 3. This constitutes the [f]inal [o]rder of the [c]ourt dismissing all of [p]laintiffs' claims and referring those claims to litigation and or arbitration in Delaware.

This appeal followed in which plaintiffs challenge only the October 9, 2019 order dismissing the claims against Goldman and Hill Wallack.

Before us, plaintiffs first argue that the court's sua sponte dismissal of their complaint, relief which was never requested by Goldman or Hill Wallack,

10

was without notice and violated their due process rights. Second, plaintiffs contend that the court's choice-of-law decision was procedurally improper and substantively erroneous.

As to the merits of the court's choice-of-law decision, plaintiffs maintain: 1) as a New Jersey attorney, the court had no basis to exclude Goldman and Hill Wallack from the <u>Saffer</u> rule, as it is intrinsic to the attorney-client relationship, and within the Supreme Court's exclusive rulemaking authority; 2) Goldman and Hill Wallack are subject to the <u>Saffer</u> rule because the recoverability of attorney's fees is a procedural remedy subject to the law of the forum; 3) the court failed to conduct properly a New Jersey choice-of-law analysis and seemingly gave insufficient weight to New Jersey's interests in the litigation; and 4) the matter should be reassigned to a different judge in the event of a remand.

Defendants argue that the court properly dismissed plaintiffs' claims under the doctrine of forum non conveniens, and that the court did not otherwise violate plaintiffs' due process rights. On the choice-of-law issue, defendants maintain Delaware, not New Jersey, has the most significant interest in resolving plaintiffs' alleged malpractice claims because that is where the relevant tortious conduct and alleged injury occurred.

11

A-0770-19

We agree, in part, with plaintiffs' first point and accordingly vacate the October 9, 2019 order and remand for further proceedings. The court improperly dismissed plaintiffs' complaint in response to a routine application seeking a choice-of-law determination, and without Goldman or Hill Wallack ever filing a motion seeking affirmative relief, let alone a dismissal of plaintiffs' case. That dispositive decision was taken by the court without appropriate notice to plaintiffs and the opportunity to respond. In any event, the court's application of a foreign state's substantive law would not support dismissal of the complaint on the record before the court.

Further, we cannot determine from the court's multiple orders if its decision to dismiss plaintiffs' complaint was based on forum non conveniens grounds. To the extent that the court's orders could be reasonably interpreted to have granted such relief, we conclude the court failed to make appropriate factual findings as to Goldman and Hill Wallack's contacts with New Jersey and the unfairness, if any, in requiring a New Jersey-licensed lawyer and law firm to respond to claims of malpractice which, according to plaintiffs, occurred in New Jersey. The court appeared to conflate the dearth of connections between New Jersey and the CBCC defendants with those among plaintiffs, Goldman, and Hill Wallack.

12

The court's choice-of-law decision suffered from similar infirmities. The October 9, 2019 order and statement of reasons failed to correlate applicable and well-settled New Jersey choice-of-law principles to the facts in the motion record as they related to Goldman and Hill Wallack, rather than to the CBCC defendants, including the parties' relationship and the locus of the underlying malpractice. Finally, we decline to reassign the matter to a different judge on remand.

II.

"Due process is not a fixed concept . . . but a flexible one that depends on the particular circumstances." Doe v. Poritz, 142 N.J. 1, 106 (1995) (citations omitted). "The minimum requirements of [procedural] due process of law are notice and an opportunity to be heard[,] . . . mean[ing] an opportunity to be heard at a meaningful time and in a meaningful manner." Klier v. Sordoni Skanska Constr. Co., 337 N.J. Super. 76, 84 (App. Div. 2001). Consistent with these principles a trial court has no authority to dismiss an action, on its own motion, without giving the parties notice and an opportunity to be heard. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314-15 (1950); Feuchtbaum v. Constantini, 59 N.J. 167, 175 (1971); see also Curzi v. Raub, 415 N.J. Super. 1, 28 (App. Div. 2010) (holding that due process required the trial judge to give

A-0770-19

the parties notice and an opportunity to be heard prior to reviewing a punitive damage award).

In addition, our Rules require that when resolving dispositive applications, a trial judge "by an opinion or memorandum decision, either written or oral, find the facts and state [his or her] conclusions of law thereon in all actions tried without a jury."  The Supreme Court has stated "[n]aked conclusions do not satisfy the purpose of [Rule] 1:7-4.  Rather, the trial court must state clearly its factual findings and correlate them with the relevant legal conclusions."  Curtis v. Finneran, 83 N.J. 563, 570 (1980).  The "[f]ailure to perform that duty 'constitutes a disservice to the litigants, the attorneys and the appellate court.'"  Id. at 569-70 (citation omitted).

Here, the court's sua sponte dismissal of plaintiffs' complaint contravened these principles.  The only applications before the court, and to which the parties had ample notice and opportunity to be heard, were the CBCC defendants' motion to dismiss plaintiffs' complaint based on the lack of in personam jurisdiction and their retainer agreement's arbitration clause, and plaintiffs' application for a choice-of-law determination as to Goldman and Hill Wallack. Neither Goldman nor Hill Wallack sought a dismissal of plaintiffs' malpractice

claims, based on forum non conveniens, lack of personal jurisdiction, or the existence of a mandatory arbitration provision in their engagement letter.

Further, in its decision on the choice-of-law motion and the motion to dismiss, the court failed to comply with Rule 1:7-4, which requires the court to clearly state its "factual findings and correlate them with the relevant legal conclusions." Curtis, 83 N.J. at 570. Rather, in its September 19, 2019 statements of reasons, which it incorporated into the October 9, 2019 final order, the court exclusively referred to CBCC and its attorneys' contacts, except for a brief mention of CBCC's work to admit Goldman pro hac vice.

When a civil action is brought in New Jersey, our courts apply New Jersey's choice-of-law rules in deciding whether this State's or another state's law governs. McCarrell v. Hoffmann-La Roche, Inc., 227 N.J. 569, 583 (2017) (citation omitted). "The first step in a conflicts analysis is to decide whether there is an actual conflict between the laws of the states with interests in the litigation." Cont'l Ins. v. Honeywell Int'l, Inc., 234 N.J. 23, 46 (2018) (citing P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 143 (2008)). We are to take a "defendant-by-defendant approach to choice of law" when performing this analysis. See Ginsberg ex rel. Ginsberg v. Quest Diagnostics, Inc., 441 N.J. Super. 198, 230 (App. Div. 2015), aff'd, 227 N.J. 7 (2016).

A-0770-19

"If there is no actual conflict, then the choice-of-law question is inconsequential, and the forum state applies its own law to resolve the disputed issue." Rowe v. Hoffmann-La Roche, Inc., 189 N.J. 615, 621 (2007). "A conflict of law requires a 'substantive difference' between the laws of the interested states." Cont'l Ins., 234 N.J. at 46 (quoting DeMarco v. Stoddard, 223 N.J. 363, 383 (2015)). "A 'substantive difference' is one that 'is offensive or repugnant to the public policy of this State.'" Ibid. (quoting DeMarco, 223 N.J. at 383).

New Jersey employs the most significant relationship test in resolving choice-of-law questions in tort actions. See In re Accutane Litig., 235 N.J. 229, 260 (2018). In Calabotta v. Philbro Animal Health Corp., 460 N.J. Super. 38, 57 (App. Div. 2019), we analyzed which state "has the most significant relationship to the occurrence and the parties under the principles stated in § 6" of the Restatement (Second) Conflict of Law. Those contacts include:

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.

16

[Id. at 57 (alteration in original) (quoting Restatement (Second) of Conflict of Law § 145(2) (Am. Law Inst. 1971)).]

Here, the trial court failed to provide a defendant-by-defendant analysis in its choice-of-law discussion, relying primarily on facts related to the CBCC defendants instead of those related to Goldman and Hill Wallack. Second, the court's choice-of-law analysis failed to address whether there was a conflict between the substantive laws of New Jersey and Delaware, or which state had the most significant relationship to the occurrence and the parties. On remand, the court must determine whether there is such a conflict, and if so, address which state has the most "significant relationship" under the applicable Restatement principles.

Finally, we note that even if the court concludes Delaware law should apply to defendants' alleged tortious conduct, any such decision would not settle issues of the appropriate forum. See Ginsberg, 441 N.J. Super. at 246, 250 (finding New York law applied to defendants but remanding for continuation of proceedings in New Jersey). As such, this was not a situation in where the court properly exercised its discretionary authority to dismiss an action as resolution of the application before it resolved all remaining issues between the moving parties. See Sheild v. Welch, 4 N.J. 563, 567 (1950) (holding a court has broad

authority to settle questions of law prior to trial and "[if] no issue remains[,] judgment must necessarily follow for one or the other party").

### III.

Defendants also contend that the court correctly dismissed plaintiffs' complaint under the doctrine of forum non conveniens. In making this argument, defendants appear to request that we discern from the court's September 19, 2019 and October 9, 2019 orders its intention to dismiss the case based on the principles detailed in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947). We decline to do so.

The doctrine of forum non conveniens "is equitable in nature and, therefore, decisions concerning its application ordinarily are left to the sound discretion of the trial court." Kurzke v. Nissan Motor Corp. in U.S.A., 164 N.J. 159, 165 (2000) (citations omitted). An "appellate court should not substitute its judgment for that of the trial judge unless there is a showing of clear abuse of that discretion." Ibid. When a court granting a forum non conveniens dismissal "misconceives the applicable law, however, de novo review is required because the [trial court's] exercise of the legal discretion lacks a foundation and becomes an arbitrary act." Paradise Enters. Ltd. v. Sapir, 356 N.J. Super. 96,

18

102 (App. Div. 2002) (alteration in original) (citations and internal quotation marks omitted).

In exercising its discretion in granting dismissal for forum non conveniens, the court is guided by: (1) preferential consideration to plaintiff's chosen forum; (2) the adequacy of the chosen forum, and that defendant be "amenable to process" there; and (3) the private- and public-interest factors set forth in Gulf Oil Corp., 330 U.S. at 508-09. Yousef v. Gen. Dynamics Corp., 205 N.J. 543, 557-58 (2011). The private-interest factors are:

> [1] the relative ease of access to sources of proof; [2] the availability of compulsory process; [3] the cost of obtaining the attendance of witnesses; [4] the ability to view an accident scene, if that would be beneficial to the factfinder; [5] the enforceability of a judgment; and [6] all other practical problems that make trial of a case easy, expeditious and inexpensive.
>
> [Ibid. (citations and internal quotation marks omitted).]

The public-interest factors are:

> [1] consideration of trial delays that may occur because of backlogs in a jurisdiction; [2] whether jurors should be compelled to hear a case that has no or little relationship to their community; [3] the benefit to a community of having localized controversies decided at home; and [4] whether the law governing the case will be the law of the forum where the case is tried.
>
> [Ibid. (citations and internal quotation marks omitted).]

A-0770-19

A court should not dismiss based on forum non conveniens unless the choice of forum is "demonstrably inappropriate." Ibid. (citing Kurzke, 164 N.J. at 171-72). In addition, "[a]s a general rule, a motion for dismissal due to forum non conveniens should not be heard unless the movant has made a good faith effort to obtain discovery and can provide the court with a record verifying that discovery is unreasonably inadequate for litigating in the forum chosen by the plaintiff." Kurzke, 164 N.J. at 168.

Here, the court did not evaluate the Gulf Oil factors as it related to Goldman or Hill Wallack, or if plaintiffs' choice of a New Jersey forum, even as non-residents, was "demonstrably inappropriate." See Chubb Custom Ins. v. Prudential Ins. of Am., 394 N.J. Super. 71, 81-82 (App. Div. 2007) (reversing trial court's forum non conveniens dismissal as abuse of discretion because balance of factors did not favor defendant, discovery had not begun, and New Jersey-resident plaintiffs were entitled to deference in choice of forum), aff'd, 195 N.J. 231 (2008). Because the court did not properly consider the Gulf Oil factors, we reject defendants' contention that the court's dismissal was supported under the doctrine of forum non conveniens.

IV.

Finally, we have considered plaintiffs' arguments that the matter be reassigned to a different judge on remand and conclude they are of insufficient merit to warrant discussion in this opinion. See R. 2:11-3(e)(1)(E).

In sum, we vacate the October 9, 2019 order dismissing plaintiffs' claims against Goldman and Hill Wallack and remand for the court to issue supplemental findings of fact and conclusions of law consistent with Rule 1:7-4(a) as to plaintiffs' choice-of-law motion. Nothing in our opinion should be interpreted as an expression of our views as to the substantive law to be applied to plaintiffs' malpractice claims against Goldman and Hill Wallack, or the propriety of the matter proceeding in a New Jersey court.

Vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0770-19